**KAY, Plaintiff-Appellee, v. PENNSYLVANIA RAILROAD CO. et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21823. Decided February 13, 1951.

Harrison, Thomas, Spangenburg & Hull, Cleveland, for plaintiff-appellee.

Squire, Sanders & Dempsey, McConnell, Blackmore, Cory & Burke, Cleveland, for defendants-appellants.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment entered in favor of the defendant, The Pennsylvania Railroad Company, and against the defendant, The Orr Felt and Blanket Company, on the Pennsylvania Railroad Company's amended counterclaim. This is a companion case to the appeal of both of these defendants from a judg-

ment rendered against them in favor of the plaintiff which appeal is separately considered and to which reference may be made for a more complete statement of the facts.

An issue was raised between the two defendants by the amended counterclaim of the Pennsylvania Railroad Company against the defendant, The Orr Felt & Blanket Company, seeking a declaratory judgment with regard to an alleged agreement of indemnity upon the part of The Orr Felt & Blanket Company to save the Pennsylvania Railroad Company harmless from the obligation to pay any judgment that might be rendered in this action in favor the plaintiff and against either or both defendants. After the jury was impanelled and sworn, the court proceeded to hear the arguments on the issues between the two defendants out of the hearing of the jury. The Court found for the defendant, The Pennsylvania Railroad Company, on its amended counterclaim holding that the defendant, The Orr Felt & Blanket Co., was bound to hold the Railroad Company harmless from any judgment for the plaintiff in this action.

The amended counterclaim alleges that on May 27, 1920, these defendants entered into an agreement with respect to the Orr Felt & Blanket Company constructing an unloading machine over the switch track which runs through the Felt Company's property from Wayne Street to Main Street and known or designated as "side track No. 16" in the agreement.

On February 5, 1918, the defendants had entered into an agreement with regard to the use of said side track by The Orr Felt & Blanket Company and providing that they could build a shed across the track connecting two of the buildings of the Felt Company. In this agreement side track No. 16 is designated as a part of "commercial street side track," because, as is indicated by the evidence, the property between the buildings of The Orr Felt & Blanket Company upon which a part of the side track was built was a public highway known as Commercial Street. However, it seems now to be used as private property for the use of the defendants with a fence at the property line of Wayne Street and also at Main Street and gates over the track. These gates are kept locked except when the track is in use.

The agreement of February 5, 1918 in part provided:

"The second party, (The Felt Company), shall have the right, subject to the requirements of public authority, to make use of said side track adjacent to its property between Wayne Street and Main Street for loading and unloading cars, when such use does not interfere with other use of said track by the first party, (The Pennsylvania Railroad Company).

It is further agreed that the second party shall have permission and the right to construct and maintain, subject to the requirements of public authority and in a manner satisfactory to the first party, a shed or covering over and across said side track and connecting the two buildings of the second party as shown in 'Exhibit A.' "

(Exhibit A shows the shed which was constructed had a clearance of 21' above the tracks. The drawbridge, subsequently constructed, was built under this shed.)

The agreement further provided in part:

"The second party agrees not to erect or allow to be erected any building structure or fixture of any kind in dangerous proximity to said track, and will protect, indemnify and save harmless the first party against loss, damage and expenses in consequence of injury to person or property by reason of such structure or fixture."

The Pennsylvania Railroad Company's first counterclaim was founded on this contract in seeking a declaratory judgment holding The Orr Felt & Blanket Company bound to indemnify the Pennsylvania Railroad Company to the extent of any amount it might be compelled to pay the plaintiff, Kay.

The amended counterclaim, as above indicated, abandoned the 1918 agreement (although it included a recitation of its terms) and stated its cause of action on the provisions of the 1920 agreement which had to do with the building of an unloading machine.

The 1920 agreement provided in part that The Orr Felt & Blanket Company was granted the temporary right to erect an overhead unloading machine with all appurtenances connected therewith. The Orr Felt & Blanket Company was to keep covered all pit openings in a substantially safe manner and the overhead connections when not in use to be kept a safe distance from the track. The unloading machine was not to be used by any other shipper without the written consent of the Pennsylvania Railroad Company. The Orr Felt & Blanket Company agreed to "assume all expense of securing and complying with any necessary ordinance, order, permit or consent of public authority for the construction, maintenance and operation of said side track or unloading machine * * *."

The 1920 agreement also provided:

"The second party agrees to indemnify, protect and save harmless the first party, its successors and assigns, from all liens, actions, costs, loss and damage growing out of or resulting from injuries to persons or damages to property which may arise or result from the location, maintenance and operation of said unloading machine and appurtenances or other

buildings, structures or fixtures by said second party or any other person or persons in its behalf, regardless of whether or not the negligence of the servants, agents and employees of the first party caused or contributed to any such injury to person or damage to property.

"This agreement shall not supersede or annul any part of the agreement between the first party and the second party hereto dated February 5, 1918, permitting the use of the side track adjacent to the said unloading machine." ·

On July 5, 1921, the same parties entered into a contract for an additional side track designated as No. 40, the drawing or plan of which shows the unloading machine in a different place. This contract was abrogated by an agreement of Nov. 25, 1941 which was drawn at the request of The Orr Felt & Blanket Company. This agreement specifically provides that it should not abrogate or supersede both the 1918 and 1920 agreements and designates the 1920 agreement as, "covering the erection, operation and maintenance of an overhead unloading machine."

The unloading machine was never built.

In 1939, without a contract but with full knowledge and at least the implied consent of the railroad company, The Orr Felt & Blanket Company built the overhead drawbridge with the clearances above set forth. This is the only improvement connected with or about the railroad company's switch tracks which was not preceded by a written agreement between the parties. The railroad company addressed a letter to The Orr Felt & Blanket Company on March 24, 1938, calling attention to the fact that the Public Utilities Commission had sent out administrative order No. 9 which dealt with the subject of clearance including therein a copy of §8976-1 GC. This letter was undoubtedly sent as a result of the Felt Company's letter to the Railroad Company dated September 28, 1936, in which they included a drawing of the proposed drawbridge.

The trial court found that the provisions of the 1920 contract obligated the Felt Company to indemnify the Railroad for any loss or damage assessed against them by judgment or otherwise occasioned by an injury to persons or damage to property proximately resulting from the maintenance and operation of the drawbridge. From this judgment the Felt Company instituted this appeal and assigned the following errors:

1st. The trial court considered the declaratory judgment before any actual controversy existed between the parties.

2nd. That the trial court erred in holding The Orr Felt and Blanket Company was obligated to indemnify the Rail-

road Company for any loss, expense or judgment recovered by George H. Kay against the Railroad Company.

The first assignment of error of the Felt Company is not well taken. The declaratory judgment act (§§12102-1 to 12 GC inclusive), provides for the right to a judicial determination of the rights of the Railroad Company under its contract of 1920 with the Felt Company. A real justiciable controversy existed between these defendants. The question of the extent to which the Felt Company was bound to indemnify the Railroad Company under the 1920 agreement, that is, whether its provisions extended to loss suffered because of the overhead drawbridge built in 1939 was a matter of immediate importance to the Railroad Company in determining the extent to which it would be required to conduct a defense to the principal action. To settle controversies such as this, was the purpose for which the act was passed.

**Schaefer v. The First National Bank, 134 Oh St 511; Insurance Company v. Jones, 152 Oh St 287.**

The defendant Felt Company's first assignment of error upon this branch of the case must therefore be overruled.

Coming now to the second assignment of error. it must be noted that there is but one question and this is whether the indemnity provisions of the agreement of 1920 which was entered into for the purpose of granting the Felt Company the right to build an unloading machine over the Railroad Company's switch track can, by construction, be said to include loss or damages resulting from personal injuries caused by the overhead bridge constructed by the Felt Company eighteen years later. The provisions of the 1920 contract relied upon by the Railroad Company as quoted above, is as follows:

"The second party agrees to indemnify * * * and save harmless the first party * * *, from all liens, actions * * * and damage * * * resulting from injuries to person * * * resulting from the location, maintenance and operation of the said unloading machine and appurtenances or **other buildings, structures** or **fixtures** by the second party * * * regardless of whether or not the negligence of the servants, agents and employees of the first party caused or contributed to such injury * * *." (Emphasis ours.)

When the 1920 agreement is considered "from its four corners," one cannot escape the conclusion that the only thing the parties were then concerned with was the unloading machine. Its purpose clause after reference to the 1918 agreement granting the right to use side track No. 16 provides:

"Whereas, the second party also desires to erect, maintain and operate an overhead unloading machine for the purpose

of conveying the loading of cars to conveyances of the second party, to be located as shown on said "Exhibit A," with the minimum dimensions and clearances thereon given.

"Now, therefore, in consideration of the sum of Fve Dollars ($5.00), the receipt whereof is hereby acknowledged, it is agreed between the parties that the first party is willing to grant temporarily the right to erect, maintain and operate the said unloading machine, upon the following terms and conditions: * * *"

It must be also noted that the 1941 revision of the 1921 contract which was executed two years after the drawbridge had been constructed refers to the 1920 agreement as above indicated "covering erection, operation and maintenance of an overhead unloading machine." Such 1941 revision of the 1921 contract makes no reference however, to the overhead bridge although it had then been constructed, which strongly indicates that the parties had no intention of including it within the provisions of the indemnity provision of the 1920 agreement.

Contracts of indemnity which seek to exonerate the indemnitee from the consequences of his own negligence must be strictly construed. The circumstances under which the indemnitee is to be exonerated must be expressed in clear and unequivocal terms. Where words of a general nature follow words dealing with a specific subject, the general words should be held to include only things of the same nature as the subject specifically dealt with.

In the case of **Dingledy Lumber Co. et al v. Erie Railroad Company, 102 Oh St 236,** it was held:

(1) Public policy requires that contracts of indemnity purporting to relieve one from the results of his failure to exercise ordinary care shall be strictly construed, and will not be held to provide such indemnification unless so expressed in clear and unequivocal terms.

(2) Where, in a contract of indemnity, general words are used after specific terms, the general words will be limited in their meaning to things of like kind and nature as those specified.

(3) Such principle of construction should be applied to the contract of indemnity involved in this case, and an undertaking to save harmless from loss, damage or injury "by fire or otherwise" includes only loss, damage or injury arising from fire or causes kindred thereto and does not include injury caused to an employee of the lessee by the negligent operation of the lessor's locomotive.

On page 242 of the opinion the Court says:

"Public policy clearly requires that such contracts shall be restricted rather than extended. It is a fundamental rule in the construction of contracts of indemnity that such a contract shall not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in clear and unequivocal terms. (14 Ruling Case Law, 47.)

"The liability of such indemnitee is regarded to be so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the liability unless the contract puts it beyond doubt by express stipulation. It cannot be established by inference from words of general import."

And on page 245 the court says:

"It is clear that the parties did intend that the indemnification agreement should cover loss or damage by fire. That purpose is plainly expressed by the contract. It is not clear what other causes of loss or damage were contemplated. The principle of construction known as **ejusdem generis** therefore should be applied in determining what is included in the term "by fire or otherwise." The application of that rule would require that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase should be held to include only things of the same general nature as those specified. If that rule of construction be applicable here, then the indemnity provision would cover only such loss, damage or injury as was occasioned by fire or kindred causes, such as smoke, water, etc."

See also—**Insurance Co. v. Westinghouse, 148 Oh St 139; Insurance Co. v. Liberman, 47 Abs 300.**

We come, therefore, to the conclusion that the indemnity provisions of the 1920 agreement cannot be construed to mean that The Orr Felt & Blanket Company agreed to indemnify the railroad company from the consequences of the action brought by George Kay. The judgment for the defendant, The Pennsylvania Railroad Company, against defendant, The Orr Felt & Blanket Company, upon the railroad company's counterclaim against the Felt Company for a declaratory judgment is reversed and final judgment entered for the defendant, The Orr Felt & Blanket Company.

Judgment reversed and final judgment for defendant, The Orr Felt & Blanket Company. Exceptions. Order see journal.

McNAMEE, J, HURD, J, concur.