NATIONAL SURETY CORP., Plaintiff,

v.

ERSKINE & SONS, INC., Defendant.

Civ. No. 34556.

United States District Court
N. D. Ohio, E. D.

Nov. 3, 1960.

Mark O'Neill of Johnson, Weston, Blackmore, Cory & Hurd, Cleveland, Ohio, for plaintiff.

Donald F. Billett, Youngstown, Ohio, for defendant.

CONNELL, District Judge.

This case is before the Court for construction of an indemnity agreement entered into by T. L. James & Company (hereinafter called James) and the defendant. The essential facts upon which this action is predicated are as follows. James, a construction company, was awarded a prime contract from the Ohio Turnpike Commission to construct a section of the Ohio Turnpike. James subcontracted the hauling of sand, gravel and cement to the defendant. On July 5, 1955, Willie Smith, one of defendant's truck drivers, was injured in the scope of his employment while working for defendant on its turnpike subcontract. For purposes of this action, it is conceded that the accident was caused by the sole negligence of James in providing a faulty ramp upon which defendant's trucks were to drive in traversing the medial strip of the turnpike. Smith in-

stituted an action in Cuyahoga County Common Pleas Court against James to recover for injuries suffered in this accident. National Surety, under the terms of a policy of comprehensive liability insurance it issued to James, undertook its obligation to defend James against Smith's claim. Plaintiff's counsel engaged in settlement negotiations with counsel for Smith, and the suit was finally settled on October 25, 1957, for $5,000. It is admitted that $5,000 was a reasonable amount to pay in settlement in view of the nature and extent of Smith's injuries, and James' liability therefor. (Admission No. 33). As a result of assuming the defense of the suit, plaintiff became subrogated to the rights of James, and consequently seeks indemnity from defendant under the hold harmless agreement of the express contract of indemnity entered into between James and defendant.

Prior to the submission of the case to the Court, plaintiff, under Rule 36 of the Federal Rules, requested defendant to admit certain facts and the genuineness of certain documents. Defendant's answer to these requests admitted some of the statements, denied others, and neither admitted nor denied the remainder. Because of these answers, a genuine issue of fact was created, and consequently the case was tried before a judge without a jury. On June 8, 1960, after both counsel had made opening statements, the defendant admitted the matters denied in its previous answer to the requests for admissions. Consequently, plaintiff rested its case on the pleadings, and on the facts established by defendant's admissions. No evidence was offered by defendant, and the cause was submitted to the Court for decision.

 Both parties have, by implication, recognized that the situation is governed by Ohio law under the decision in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. This being so, it is clearly the express law of Ohio that contracts of indemnity purporting to relieve a corporation from the results of its own negligence, while not contrary to public policy, must nevertheless be strictly construed, and will not be given this effect unless the intent to so indemnify is expressed in clear and unequivocal terms. Dingledy Lumber Co. v. Erie R. R. Co., 1921, 102 Ohio St. 236, 131 N.E. 723; Kay v. Pennsylvania Ry. Co., 1952, 156 Ohio St. 503, 103 N.E.2d 751. The issue then is whether the indemnity contract here under scrutiny sufficiently expresses the intent to indemnify James for the expenses incurred as a result of Smith's accident, even though the accident was solely a result of its negligence.

The hold harmless clause with which we are concerned reads as follows:

"Erskine & Sons, Inc. does further agree to hold harmless of *every claim or demand* which any employee of Erskine & Sons, Inc. *may have asserted* or may assert in the future against T. L. James & Company and arising out of the above-indicated subcontract." (Emphasis added).

When the language of this clause is compared to the language of other indemnity provisions that have been held not to indemnify for the party's own negligence, as for instance Massachusetts Bonding & Ins. Co. v. Westinghouse Elec., Ohio App.1947, 72 N.E.2d 388, it becomes apparent that the expression "every claim or demand" does not conclude us in favor of plaintiff. Actually, in applying the general rule of Ohio law to a particular indemnity clause, a court might even reject the specific use of the word "negligence" in determining the scope of the agreement, for when a court is called upon to ascertain the intention of the parties to an indemnity contract, it must take into consideration not only the language of the contract, but also the situation of the parties and the circumstances surrounding them at the time the contract was made. City of Cleveland v. Baltimore & Ohio Ry., 6 Cir., 1934, 71 F.2d 89. See 28 O.Jur.2d 311. Thus, even though the parties have agreed essentially upon the facts and the law controlling in this case, the clause cannot be construed solely through a comparison of the language here with the language in

other situations entirely divorced from the circumstances of the instant case.

■ What are the controlling circumstances in this case? To us several things are significant. First, the indemnity agreement was drawn and signed by defendant alone, through its president. Thus we must apply the general rule of contract law that the agreement should be construed strictly against the person who prepared it, and favorably to the person who had no voice in the selection of the language, for this rule applies equally to contracts of indemnity. Zurich General Accident & Liability Ins. Co. v. Liberman, Ohio Com.Pl.1947, 71 N.E. 2d 281. Additionally, defendant admits that on several occasions it had corresponded with plaintiff concerning various matters involved in the pending suit of its employee Smith against James at a time several months prior to the time it reduced the settlement agreement to writing and signed it (Admissions Nos. 13, 15, 19 and 26). When this situation is viewed against the background of the rule of contract construction discussed above, the specific inclusion in the agreement of employee claims asserted both in the past and in the future, together with the use of the phrase "every claim", indicate an awareness that the agreement included the claim made by Smith, and all other tort claims, regardless of by whom they were caused. The hold harmless clause contains no restrictions whatsoever in its apparent coverage, and it is only because of the rule of law expressed in the Dingledy case, supra, that a problem arises with respect to the construction of the clause. It would have been a simple matter for defendant, in preparing the agreement, to exclude from indemnification all claims resulting from plaintiff's negligence generally, or simply to have excluded Smith's claim in particular. It apparently chose to do neither, and thus cannot now escape its clear contractual obligation by reverting to a rule of construction that attains significance only in so far as the factual circumstances surrounding a particular contract allows. Defendant, in its memorandum of law filed after the case had been submitted for decision, argues that it obviously did not intend to extend indemnification to the claim made by Smith, since Smith's prayer was for $50,-000, and the consideration from James for the return promise of defendant to indemnify was only $12,000. To our mind, this fact actually strengthens our construction of the agreement, for if defendant was truly aware of and concerned with the amount of the prayer in the Smith claim, it chose a peculiar method of expressing its concern. The language in the hold harmless clause, rather than excluding the claim, appears to have intentionally included it in that there is no other evidence before the Court that would show any other claim which an employee of defendant "may have asserted" against James at the time the settlement agreement was signed by defendant. In any event, the claim was ultimately settled for $5,000, considerably less than the total consideration defendant received from James.

Defendant further asserts that the many cases cited by plaintiff which have treated a particular indemnity clause as including claims brought about by the sole negligence of the indemnitee are not good authority for the instant situation, because in the other cases the involved clauses specifically included losses due to injuries. Thus defendant apparently would treat claims resulting from tortious conduct differently from the "claim or demand" used in the settlement agreement. To us there is no logical basis for making such a distinction. A claim or demand is the same whether arising out of tort or contract. Further, the Sixth Circuit apparently does not recognize such a distinction. In General Acc. Fire & Life Assur. Corp. v. Smith & Oby Co., 6 Cir., 1959, 272 F.2d 581, 585, the Court had before it a problem similar to the one presently confronting us. In reversing the District Court's denial of the right to indemnification, the Court emphasized language in the agreement that allowed indemnification for claims "arising from any cause or for any reason

whatsoever", and maintained that more comprehensive language could hardly have been used. In that case, claims due to injury were included in the provision, but only the above-quoted language was stressed as the basis for reversal, and that language differs very little from the comprehensive language used in the instant case. See Standard Acc. Ins. Co. v. National Fire Proofing Co., 1931, 39 Ohio App. 1, 176 N.E. 591, for further authority that the inclusion of the word "injury" is not the dominant consideration in this area of contract interpretation.

In view of the above-discussed law and facts, plaintiff is hereby awarded judgment against defendant in the sum of $5,000, with interest from October 30, 1957. An order may be prepared in accordance with the foregoing.