Earl MACON, Individually and as Next Friend for Samuel Earl Macon, a Minor, Plaintiffs,

v.

WARREN PETROLEUM CORPORATION, Defendant.

Civ. A. No. 2964.

United States District Court
W. D. Texas,
San Antonio Division.

Feb. 22, 1962.

Roy C. Brock, San Antonio, Tex., for plaintiff.

Grady Barrett, San Antonio, Tex., for defendant Warren Petroleum Corp.

Harold K. Stanard, San Antonio, Tex., for defendant Alamo Lumber Co.

SPEARS, District Judge.

This case involves the construction of an indemnity contract. Plaintiff, Earl Macon, individually and as next friend for his son, Samuel Earl Macon, a minor, filed suit against Warren Petroleum Corporation (hereinafter sometimes referred to as Warren), for personal injuries sustained on July 1, 1960, when both of them were overcome by a poisonous gas which entered the room of a building belonging to Warren, in which they were working as employees of Alamo Lumber Company (hereinafter sometimes referred to as Alamo).

On the 1st day of June, 1960, Warren and Alamo had entered into a written

contract, under which Alamo as Contractor would from time to time supply labor, supervision, expendable supplies, machinery and tools necessary to accomplish certain work for Warren at or in connection with its natural gasoline plant near Fashing, Texas, pursuant to the rate set forth in an exhibit attached thereto, for such labor and equipment as may be actually utilized to re-build Warren's plant laboratory.

█ Among other things, the agreement provided that Warren, as Owner, should exercise no supervision or control over the manner of performance of the work, the parties obviously thereby intending to constitute Alamo an independent contractor on the job. In addition, the agreement contained the following indemnity provision:

"D. Indemnification, * * *. Contractor indemnifies and agrees to hold Owner harmless from any and all liability, claims, demands or judgments for damages resulting from injuries to or death of persons, including Contractor and Contractor's employees, or any injury to or destruction of property of others, including the property of Contractor or that of Contractor's employees, or any damages or losses to the property of Owner while Contractor is performing the work, which arise out of or in connection with the activities of Contractor, Contractor's servants, agents and employees * * *."

In furtherance of the indemnity, the agreement required that Contractor maintain certain workmen's compensation, automotive liability, and public liability, insurance.

Plaintiffs alleged that on July 1, 1960, they were directed by their employer, Alamo Lumber Company, to go to the plant of Warren Petroleum Corporation for the purpose of doing carpentry work; that they reported for work as directed, and commenced their duties in one of the buildings connected with the plant; that after they had worked for fifteen or twenty minutes they noticed a repugnant odor, and attempted to leave the building, but that before either could get away they became unconscious and lay in the building for an unknown period of time, until they were removed by two of Warren's employees; that the exact nature of the gas emitting the odor was unknown to them, but well known to Warren; that it escaped from a place unknown to them, but well known to Warren; that the gas was known by said defendant, its agents, servants and employees, to be poisonous, but that due care had not been exercised by them to prevent its escape, all of which constituted negligence on the part of Warren, its agents, servants and employees, who were acting at all times specified within the course and scope of their employment for said defendant.

Upon a trial of the cause before a jury, each plaintiff was assessed damages against Warren in the sum of $5,000.00. The jury in rendering its verdict, under the Court's Charge, necessarily found negligence against Warren, and absolved the plaintiffs of any contributory negligence. The parties hereto have agreed that the indemnity question, including all matters of law and/or fact relating thereto, may be resolved by the Court.

This present controversy arises, of course, because of Warren's contention, as third-party plaintiff, that if judgment is rendered against it, then it is entitled to judgment over against Alamo, as third-party defendant, under the indemnity agreement. Alamo, however, takes the position that the indemnity agreement did not bind it to indemnify Warren under the circumstances of this case, against Warren's own negligence, because plaintiff's injuries did not "arise out of or in connection with the activities of Contractor, Contractor's servants, agents and employees;" that the doctrine of strictissimi juris applies; that the fact that plaintiffs were engaged in the course of their work and employment for Alamo at the time of their injuries, and were eligible for and did receive workmen's compensation benefits, has no bear-

ing on the question of a proper interpretation of the indemnity agreement; that the negligent act of Warren in permitting gas to be introduced into the room through a pipe leading into the building from the outside, was unrelated to the "activities" of the plaintiffs and of their employer, Alamo, and was not within the terms of the indemnity provision; and that plaintiffs activities merely caused them to be at the place where their injuries occurred, but had no causal connection with the thing that produced the injuries.

In response to requests for admissions filed by Warren, Alamo admitted, in addition to the execution of the contract containing the indemnity agreement, that plaintiffs were employees of Alamo at the time they were injured; that the contract was then in effect; that the work being done by plaintiffs was being performed by them at the instance of Alamo, under said contract; that plaintiffs' injuries were sustained while they, as the employees of Alamo, were performing the work; that in connection with the obligations of Alamo under the contract, plaintiffs were required to do work in the building where they were injured; that plaintiffs were engaged "in some kind of activity or work" for Alamo in Warren's building at the time they were injured; that plaintiffs' injuries arose out of the fact that they were in the building of Warren in the performance of their duties as carpenters; that Alamo was conducting the work and activity required of it under its contract with Warren, when its employees were injured; that Alamo filed the Employer's First Report of Injury pertaining to plaintiffs, with the Texas Industrial Accident Board, under the provisions of the Employers' Liability Law, Vernon's Ann.Civ.St. art. 8307, § 7; that Alamo's insurer, Liberty Mutual Insurance Company, paid workmen's compensation and medical benefits to plaintiffs, and, through its attorney, filed on behalf of Alamo, an answer to the third party complaint of Warren, and is presently defending Alamo under the terms of a comprehensive liability policy issued by it to Alamo.

Needless to say, Warren contends that it is entitled to indemnification from Alamo under the circumstances, because plaintiffs' injuries, undisputedly arose in connection with the activities of their employer and themselves, "it being obvious that the plaintiffs would not have been injured if they had not been working at the place and time in question." Warren further says that in view of the admissions made, Alamo is now estopped to contend that the injuries received by plaintiffs did not arise out of or were not in connection with their activities.

In Texas an agreement to indemnify an indemnitee against the consequences of its own negligence is not contrary to the public policy of the state. James Stewart & Co., Inc., v. Mobley, 1955, Tex.Civ.App., 282 S.W.2d 290, writ refused; Mitchell's, Inc., v. Friedman, 1957, 157 Tex. 424, 303 S.W.2d 775, 779. While indemnity contracts are strictly construed against the indemnitee, and the liability of the indemnitor cannot be extended beyond the express terms of the contract, the Supreme Court of Texas has said that it is not necessary for the parties to say in so many words that they intend to protect the indemnitee against liability for negligence, it being sufficient if it clearly appears from the agreement that such was the intention of the parties. Mitchell's, Inc., v. Friedman, supra. After reviewing the law relative to the construction of indemnity contracts, as well as with respect to the application of the doctrine of strictissimi juris, that Court said:

"In determining the rights and liabilities of the parties, therefore, their intention will first be ascertained by rules of construction applicable to contracts generally. At this point neither party is favored over the other simply because their agreement is one of indemnity. After the intention of the parties has been determined, however, the doctrine of strictissimi juris applies and

the liability of the indemnitor under his contract as thus interpreted will not be extended beyond the terms of the agreement."

There seems to be no question as to what the law is. The difficulty lies in applying it to the facts of each case, and, apparently, in this type of situation it is seldom that two cases are found which contain identical indemnity provisions. Each case, therefore, must stand pretty much on its own bottom.

A somewhat similar situation to that involved in the instant case was the case of Smoke v. Turner Const. Co., D.C.Del., 54 F.Supp. 369. There, an employee of a sub-contractor was injured when a hard object fell on him from one of the floors above while he was working as a mortar mixer in a hospital. It was assumed by the Court that the injury resulted from the negligence of the general contractor. The indemnity agreement between the contractor and the sub-contractor provided, in part, that "the subcontractor hereby assumes entire responsibility and liability in and for any and all damages or injury of any kind or nature whatever to all persons, whether employees or otherwise * * * growing out of or resulting from the execution of the work provided for in this contract, or occurring in connection therewith."

The Court said that if the agreement was held not to apply to the general contractor's negligence, it meant nothing, for the general contractor could be held liable only for negligence; that the "magic words" of the contract were "occurring in connection therewith;" that the work the sub-contractor was to do in

connection with the erection of the hospital was the connecting link between the employee's injury and the contractor's carelessness, for if the sub-contractor had not performed the work, the employee might not have been injured; and that, since the employee's injuries were suffered in connection with the work the sub-contractor was to do, the sub-contractor should indemnify the contractor. The cases of Santa Fe, Prescott & Phoenix Railway Company v. Grant Brothers Construction Company, 1913, 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787, and Kokusai Kisen Kabushiki Kaisha v. Columbia Stevedoring Co., Inc., D.C., S.D.N.Y., 23 F.Supp. 403, 405, affirmed, 2 Cir., 100 F.2d 1016, are cited in support of the conclusions reached by the Court.

In the instant case, the plaintiffs' injuries clearly arose in connection with their activities while they were performing the work of Alamo under its contract with Warren. To require that there be a causal connection between their "activities" and the thing that produced the injuries, would be to place a highly restricted meaning upon that term and to read into the agreement words that simply are not there. It is unnecessary to look beyond the express terms of the contract itself to see that the parties intended that Warren should be indemnified by Alamo for any loss sustained as a result of injuries to Alamo's employees, even though they resulted from Warren's own negligence. Whether or not the agreement was a wise one from the standpoint of Alamo, is not a subject of inquiry by this Court.

The indemnity provisions in the cases [1] cited by Alamo are distinguishable from

1. Employers Casualty Co. v. Howard P. Foley Co., Inc., 1946, 5 Cir., 158 F.2d 363, in which the injury was received before the employees got to the place where the work would begin; Halliburton Oil Well Cementing Co. et al. v. Paulk et al., 1950, 5 Cir., 180 F.2d 79, where the Court found that the purpose of the work order disclaiming responsibility clearly showed no agreement to indemnify; Standard Oil Co. of Texas et al. v. Wampler et al., 1955, 5 Cir., 218 F.2d 768, in which the Court recognized the general principles of law applicable, but held that the intention to indemnify against indemnitee's negligence was not expressed in unequivocal terms; Humble Oil & Refining Company v. Wilson et al., 1960, Tex.Civ.App., 339 S.W.2d 954, writ ref. n. r. e., where the agreement provided for indemnity from loss resulting from the indemnitor's "negligent acts or omissions," and the Court held that the dominant weight of authority establishes that a loss where the indemnitee's negligence concurs in causing the injury,

that involved in this case, in that the intention to indemnify the indemnitee for its own negligence, could not be found from a fair construction of the language used in those provisions.

Judgment will accordingly be entered in conformity with the views hereinabove expressed.

is not covered; and McCormick v. United States of America (Maytag Aircraft Corporation), 1955, D.C.S.D.Tex., 134 F. Supp. 243, in which the Court was unable to find that the contract in question spelled out in clear and unmistakable terms any obligation to hold the indemnitee harmless from the consequences of its own negligence, at the suit of third persons.