The Kroger Company, Plaintiff in Error,

*v.*

Seth E. Giem, Individually and dba Seth E. Giem & Associates, and John E. Bouchard & Sons Co., Inc., Defendants in Error.

387 S.W.2d 620.

(*Nashville*, December Term, 1964.)

Opinion filed November 12, 1964.

Petition for Rehearing Denied February 4, 1965.

WILLIAM J. HARBISON, TRABUE, MINICK, STURDIVANT & HARBISON, MILLER MANIER, MANIER, CROUCH, WHITE & HEROD, Nashville, for plaintiff in error.

GOODPASTURE, CARPENTER, WOODS & COURTNEY, Nashville, CARL N. STOKES, Memphis, for Seth E. Giem.

BOULT, HUNT, CUMMINGS & CONNERS, GLASGOW & ADAMS Nashville, for John E. Bouchard & Sons Co., Inc.

462

MR. JUSTICE WHITE delivered the opinion of the Court.

The Court of Appeals affirmed the trial court in approving the verdict of the jury which found all issues against the plaintiff and in favor of the defendants. We granted certiorari and the case has been argued at the bar of this Court.

The Kroger Company commenced an action for unliquidated damages against the defendants, wherein it sought to recover upon two theories, one sounding in tort and the other in contract, upon the following state of facts:

The Kroger Company (Kroger) let a written contract to Seth Giem and Associates, of Memphis (Giem) for certain additions and remodeling to Kroger's Nashville warehouse.

Giem sub-contracted part of the work to John E. Bouchard & Sons Company, Inc. (Bouchard).

A few days before the actual signing of the contract with Kroger, there was a conference between the officials of Giem and Kroger at its home office in Cincinnati. In this conference Giem requested that he and his sub-contractors be named on Kroger's insurance certificate and receive "protection like Kroger". In response to this request a letter was written to Giem, under the date of August 26, 1957, in which it was said:

"Attached hereto, Certificate of Insurance naming your company as an additional insured under The Kroger Company's blanket fire and extended coverage insurance. This insurance will cover your interest at our warehouse location in Nashville, Tennessee.

"Although our contractual agreement does not specify that the general contractor will be named as an additional insured under the builders risk policy, we do protect the contractor when requested to do so by naming him as an additional insured. It is not our policy, however, to extend this coverage to the sub-contractors.

"I trust that you will find the attached certificate satisfactory."

The above letter was signed by an official in the insurance department of Kroger. There is no dispute about this letter having been sent to and received by Giem.

Giem sub-contracted part of the work to Bouchard and in performing its contract two of Bouchard's employees, while in the process of cutting a hole through the roof of the warehouse to install a vent pipe, in which they were using an acetylene torch, allowed molten metal sparks to fall upon some highly flammable insulation material which caught fire and burned intensely, or as

464

some witnesses said "exploded" like gasoline. Two large stacks of this material had been stored inside the warehouse to be used in insulating freezer and banana rooms. The fire, water and smoke damage to the Kroger warehouse and grocery stock was quite extensive.

The first count of the declaration is a common law count against both defendants, alleging that both were negligent in the storing and igniting of large quantities of insulation material resulting in damage to the plaintiff's warehouse in the amount of $775,000.00.

The declaration specifically charged that the defendants were guilty of gross negligence in that (1) they did not properly supervise the work; (2) they did not remove flammable material from the area where the work was to be done; (3) they neglected to cover the flammable material to keep sparks from the cutting operation from falling on it; (4) they failed to have a watchman close by; and (5) they did not properly coordinate the work with the result that the flammable insulation material had to be stored in the warehouse while the work was going on.

The second count of the declaration is against Giem only, and is for an alleged violation of Article 30 of the building contract between Giem and Kroger, which reads:

"The contractor shall continuously maintain adequate protection of all his work from damage and shall protect the owner's property from injury arising in connection with this contract. He shall make good and hold the owner harmless from any such damage or injury."

Giem filed a general plea of not guilty and then by special plea alleged that Kroger was guilty of contributory negligence. By amended plea and replication Giem contended that Kroger had agreed to maintain insurance

for his benefit to the value of the property involved. Giem claimed that since he was a named insured in the policy there could be no recovery against him because this would permit the insurance company, Lloyds of London, to be subrogated against its own insured. Giem was thus taking the position that he occupied the same relationship with Lloyds of London as Kroger did under its general insurance policy issued by this insurance company.

Giem contended that the indemnity provision relied on in the second count of the declaration could not be construed so as to indemnify Kroger because its negligence contributed to the loss.

Bouchard filed pleas of not guilty and then by special pleas contended that Kroger was guilty of contributory negligence in storing the flammable insulation material where work was to be done and further that as a subcontractor it was entitled, under the contract, to the benefit of Giem's agreement with Kroger with respect to being included as an additional insured under Kroger's insurance policy with Lloyds of London.

After an extended period of proof the case was submitted to a jury under instructions to find a general verdict and also to report in respect to certain special issues. Upon consideration thereof the jury returned a general verdict in favor of both defendants and reported the special issues as follows:

That both defendants were guilty of negligence proximately causing the damages and losses as set out in the declaration. The jury found that Kroger was guilty of negligence proximately causing the losses and damages set out in the declaration. In other words the jury found the plaintiff and both defendants guilty of negligence

which proximately caused or contributed to the damages and under the general charge of the court, and the general verdict of the jury, this merely meant that the plaintiff could not recover and that its suit was dismissed.

The jury also reported on certain matters with respect to the contract between Kroger and Giem by which it found that Kroger was required to carry insurance to protect the defendant Giem from loss by negligent destruction by fire of the partially completed improvement; that Kroger was required to carry insurance to protect the defendant Giem from having to pay Kroger for the negligent destruction by fire of the part of the warehouse in which the new renovation was being performed; that Kroger was required to carry insurance to protect the defendant Giem from having to pay Kroger for negligent loss by fire of merchandise, equipment, supplies stored in said warehouse; and that Kroger was required to carry insurance to protect the defendant Giem from having to pay extra expense incurred by Kroger as a result of the negligently caused fire.

The jury was also asked to respond to a special issue of whether or not it found from a preponderance of all of the evidence that the Kroger Company, its servants, agents or employees, was in actual charge and control of the construction work. In response to this interrogatory, the jury answered yes.

From a recitation of the foregoing, it can be seen that we are confronted with two questions. First, is there material evidence in the record to sustain the verdict of the jury, the judgment of the trial court thereon, and the judgment of the Court of Appeals in finding and holding that Kroger was guilty of such contributory negligence as would bar recovery. The second question is whether

said Article 30 of the general contract, whereby Giem agreed to indemnify Kroger, entitles Kroger to recover from Giem as a matter of law.

In considering the question of contributory negligence of Kroger, we do so with the knowledge that the jury returned an affirmative reply to the special issue submitted to it as to whether or not Kroger, its agents or employees, were guilty of negligence proximately causing the losses and damages complained of in the declaration.

In making this determination we must construe the evidence most favorably to the defendants here and allow all reasonable inferences which tend to uphold the verdict of the jury. It is the duty of the jury to consider all of the evidence and to settle the differences that may develop therefrom. Upon appeal here we assume that all such differences have been settled by such verdict, and we have only to decide whether the circumstances of the case were sufficient in point of law and reason to permit the jury to find and reach such a verdict. *Spivey v. St. Thomas Hospital,* 31 Tenn.App. 12, 211 S.W.2d 450 (1948).

In judging whether there is sufficient material evidence to support the verdict of the jury, the reviewing court is required to look to all the evidence, construe it most strongly in favor of the successful party below; take as true that which has a tendency to support the verdict of the jury; and to discard all countervailing evidence and allow all reasonable inferences to be drawn from such evidence in favor of the defendants here. *City of Winchester v. Finchum,* 201 Tenn. 604, 301 S.W.2d 341 (1957); *Smith et al. v. Sloan,* 189 Tenn. 368, 225 S.W.2d 539, 227 S.W.2d 2 (1949); *Rose & Co. v. Snyder,* 185 Tenn. 499, 206 S.W.2d 897 (1947); *Osborn v. City of*

*Nashville,* 182 Tenn. 197, 185 S.W.2d 510 (1945); *Sneed v. Henderson,* 211 Tenn. 572, 366 S.W.2d 758 (1962); and many other cases.

In determining whether there is any material evidence to support the jury verdict, we have read the testimony of Mr. Delbert Thomas, an inspector for the plaintiff, in which he said that his duties included visits to various projects (of Kroger) to make visual observations as to what had been accomplished and also to determine whether the work was being performed in accordance with contractual requirements. Mr. Thomas said also that he had contact with most of the sub-contractors on this particular job during the course of the project. All parties agreed that he was in the warehouse at the time of the fire.

Mr. Bouchard, of Bouchard & Sons Company, said that Mr. Thomas was more than a mere inspector on the job. He testified that Thomas was expediting the work and dictating how it was to be done. He also said that Mr. Thomas had called him on numerous occasions and asked him to come by the job and go over certain matters and details with reference to the construction of the addition to the warehouse.

The superintendent of Giem, a Mr. Hudson, said that Thomas was primarily the boss of the operation and that he got his orders, information and authority from Mr. Thomas.

Hudson testified that the progress schedule was made up by Kroger Company and that Mr. Thomas would tell them when to start each job. He recalled that on the morning of the fire that Mr. Thomas was out in the warehouse expediting the placement of a drain. Thomas also

told Hudson, according to his testimony, to move certain equipment to provide space for the storage of the insulation materials, which later was set fire and exploded.

Raymond Welch, of Giem, stated that when the insulation arrived he approached Mr. Thomas to have him arrange space for the insulating material to be stored.

Mr. Giem testified that Kroger was in complete charge of all shipping schedules and had set the date for the shipping of the insulation material, which was not supposed to have arrived until March 24, 1958, but began to arrive on February 26, 1958 for some reason unexplained in the record.

■ We think from reading the testimony that Mr. Delbert Thomas performed the duties of a supervisor, or expediter, for Kroger and took an active part in running the job. The evidence also suppots the conclusion reached by the jury that the Kroger Company, acting through Mr. Thomas as the supervisor, expediter, or overseer of the job, was proximately contributorily negligent, thereby barring a recovery.

The record shows a considerable amount of conflict in the testimony concerning the duties of Mr. Thomas, but we feel there is substantial evidence that Mr. Thomas was the active supervisor of the work, set up a time schedule for the progress of the work, ordered materials, ordered the insulation in question, which he knew or should have known was highly flammable. Despite this, he ordered said insulation material stacked in the warehouse where construction work was being done and, as a matter of fact, was present on the job in the warehouse at the time of the fire.

470

The jury no doubt concluded that Mr. Thomas had charge of the construction and that the duties of Giem and Bouchard were carried out under his control and direction.

■ The question of whether or not the ''no smoking'' signs which had been placed upon the material was a sufficient warning to Bouchard and to Giem so as to relieve Kroger from being considered contributorily negligent was a question of fact for the jury and, of course, the jury determined this question against Kroger.

Kroger contends that the storage of the insulation material was a mere condition and not a direct and proxicate cause of the fire. In support of this contention the cases of *Ward v. University of the South,* 209 Tenn. 412, 354 S.W.2d 246 (1962); *Ford Motor Co. v. Wagoner,* 183 Tenn. 392, 192 S.W.2d 840, 164 A.L.R. 364. (1946); and *Moody v. Gulf Refining Co.,* 142 Tenn. 280, 218 S.W. 817, 8 A.L.R. 1243 (1920), are cited.

■ In *Moody v. Gulf Refining Co.,* supra, the defendant was absolved of liability because, although negligent in spilling gasoline, the company could not have reasonably anticipated that any one would throw a lighted match into the gasoline during the absence of Gulf employees. In the present case we have a highly flammable material stored by Kroger in the immediate area where the evidence shows that construction work, requiring the use of welding and cutting torches, was going on and where it could have and should have been reasonably anticipated that such operation might ignite this material. The jury so found.

In *Ford Motor Company v. Wagoner,* supra, we held that liability should be fastened on the last conscious

agency which might or should have averted the mischief. However, we went on to say that the intervening act of an independent conscious agency would not relieve the wrongdoer unless it appeared that the negligent intervening act of commission or omission could not have been reasonably anticipated. We think the act of commission in the present case could have been and should have been anticipated.

In *Ward v. University of the South,* supra, the Court said that where two distinct causes, unrelated in operation, contribute to an injury, one of them being a direct cause and the other furnishing the condition by which the injury was made possible, the former alone is responsible for the result. But, we think that the storage of the insulation material in the presence of construction work, which the defendants were required to carry on, cannot be said to be "unrelated in operation" so as to make the act merely a condition and not a direct and proximate cause. As a matter of fact, the very purpose of the storing of the material was to provide for its ready use when needed as well as to accommodate Kroger in use of space in the warehouse.

It is well settled that only where reasonable minds may draw but one conclusion from proven facts, that then and only then the determination of the question of proximate cause is for the court. *Illinois Central R. Co. v. Nichols,* 173 Tenn. 602, 118 S.W.2d 213 (1938).

Proximate cause need not be the last act, the one nearest to the injury or damage, or the sole cause. Proximate cause means that which is the procuring and efficient cause of the accident, and indicates nearness in causal relation. *Grigsby & Co. v. Bratton,* 128 Tenn. 597, 163 S.W. 804 (1914).

472

■ We think the putting of the flammable material in the place where it was known that construction work of the type involved was going on constituted a procuring and efficient cause which a jury could, under a proper charge from the court, deem to be proximate.

We are convinced from reading this record that the Court of Appeals was correct in affirming the judgment of the trial court in finding for the defendants on the common law count of negligence.

The question then remaining is whether Giem is liable by reason of his agreement to indemnify Kroger as set forth in Article 30 of the contract quoted above.

■ The Court of Appeals said, and we agree to its correctness, that it is nearly a universal rule that there can be no recovery where there was concurrent negligence of both indemnitor and indemnitee unless the indemnity contract provides for indemnification in such case by "clear and unequivocal terms;" and general words will not be read as expressing such an intent. 42 C.J.S. Indemnity sec. 12, pp. 580-581; 27 Am.Jur. Indemnity, sec. 15, pp. 464-465; 175 A.L.R. sec. 19, pp. 34-37. The only case from this State which discusses this rule, which has been cited or which we have been able to find, is *Buckeye Cotton Oil Co. v. Louisville & Nashville R. Co.*, 24 F.2d 347, 348 (6th Cir.). In that case it is said:

"There was no rule of public policy which forbade the railroad company from contracting with the oil company for indemnity against any damages which the railroad might be required to pay as the result of the ordinary negligence of its employees in operating engines and cars on these tracks. * * It is said, however, and rightly so, that a contract will not be so construed,

unless it was clearly intended to have that effect. This, of course, does not mean that the intention must be expressed in terms, but that, if not so expressed, it must otherwise clearly appear in the language used.''

█ When this rule is applied to Article 30 we cannot see any intent, express of implied, to indemnify against indemnitee Kroger's proximate contributory negligence.

In reaching this conclusion we have considered the cases cited by Kroger: *Southern Natural Gas Co. v. Wilson*, 304 F.2d 253 (5 C.A.1962); *General Accident Fire & Life Assurance Corp. v. Smith & Obey Co.*, 272 F.2d 581, 77 A.L.R.2d 1134 (6 C.A. 1959); *Macon v. Warren Petroleum Corp.*, 202 F.Supp. 194 (W.D.Tex.1962); *National Surety Corp. v. Erskine & Sons, Inc.*, 188 F. Supp. 687 (N.D.Ohio 1960), and we are of the opinion that these cases are distinguishable because of their particular indemnity contract provisions or because they depart from the general rule as understood by us.

The question of whether Giem and Bouchard were additional insureds under Kroger's policy is not material and has not been considered by us in the view that we take of the determinative issues in this case.

The record in this case, consisting of more than 1400 pages, has been carefully reviewed, the extremely able and exhaustive briefs have been read with great interest, from all of which we are firmly convinced of the correctness of the action of the lower courts.

The judgment of the Court of Appeals is affirmed.

BURNETT, CHIEF JUSTICE, and FELTS, DYER and HOLMES. JUSTICES, concur.

On Petition to Rehear

MR. JUSTICE WHITE.

We consider the petition to rehear as being a restatement of the excellent briefs and arguments in support thereof heretofore filed by counsel.

We have reviewed our opinion and the authorities cited and relied on for our conclusions set forth therein.

After thorough and earnest consideration of this matter for the third time, once when considering the petition for certiorari, secondly when preparing our opinion, and now finally, on the petition to rehear, we are firmly convinced of the correctness of our opinion as originally prepared and it would serve no useful purpose to repeat the reasons given to support it in this opinion on petition to rehear.

Therefore, the petition is denied.