Annie J. BROGDON

v.

SOUTHERN RAILWAY COMPANY

v.

FOOTE MINERAL COMPANY.

Civ. A. No. 5321.

United States District Court
E. D. Tennessee, N. D.

March 23, 1966.

Carter B. Wall, Franklin J. McVeigh, Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn., for plaintiff.

Clyde W. Key, Knoxville, Tenn., for Southern R. Co.

J. H. Doughty, Hodges, Doughty & Carson, Knoxville, Tenn., for Foote Mineral Co.

ROBERT L. TAYLOR, Chief Judge.

This suit was instituted by Annie J. Brogdon, widow of the late Oliver Brogdon, to recover damages against the Southern Railway Company for the death of her husband which occurred on June 12, 1964 at the place of business of the Foote Mineral Company located in the Asbury area of Knox County, while Mr. Brogdon was in the performance of his duties as an employee of the Foote Mineral Company.

For convenience, the Foote Mineral Company will be referred to hereafter as Foote and Southern Railway Company as Southern.

Mrs. Brogdon claimed that Southern was negligent in three respects: (1) that it was guilty of common law negligence in furnishing to the decedent's employer a railroad car with defective brakes knowing that the car had to be moved or otherwise placed in position by employees of Foote for the purpose of loading; (2) that it violated Section 7, Title 45, U.S.C., which is known as the Safety Appliance Act in furnishing decedent's employer a car which was not equipped with efficient brakes, and (3) that it violated Sections 65–623 through 65–630, inclusive, T.C.A., which set forth the clearances required for railroad cars located on industrial spur tracks.

It was claimed by plaintiff that the section of these statutes which was violated was the clearance section which provides in substance that overhead obstructions along the railroad tracks must be positioned at least 22 feet above the top of the rails.

Southern denied liability. It denied it violated either of the statutes or that it was guilty of common law negligence. Southern contended that the sole efficient cause of the accident was the intervening negligence of a fellow employee of the deceased and that his negligence was such as to render any negligence on the part of Southern remote, and not proximate. Southern further contends that Foote owned the land and the tracks where the accident occurred and that it was Foote's obligation to comply with the Tennessee statutes above mentioned.

Southern entered an affirmative plea of proximate contributory negligence on the part of the deceased or in the alternative, remote contributory negligence. Southern further contends that if the jury should return a verdict in favor of the widow it is entitled to be indemnified or in the alternative entitled to equitable contribution under the provisions of a contract dated June 1, 1955 between it and the Martin-Marietta Corporation, predecessor to Foote, the obligation of which Foote has assumed. Under Sections 4 and 5 of that contract Foote obligated itself to pay for any injury or death or damage caused by its (Foote's) negligence. Southern claims that it was the negligence of Foote that caused the accident and that under the aforesaid contract Foote should be required to pay the damage in toto, and if not in whole, an equitable portion thereof.

Third party defendant Foote joined substantially if not literally in the defenses of Southern to the original claim. In addition, Foote claimed that it did not assume or obligate itself to pay any part of the damages which the jury might render in this case. Among other things, it asserted that the contract was not assignable without the written consent of the railroad. In the opinion of the Court that defense is without merit as that provision of the contract was for the benefit of the Southern and if it does not rely on it Foote cannot.

Foote further denied that the contract by which it acquired this property applied to the agreement dated June 1, 1955 involved in this case. It says in effect that the contract of purchase only applied to leases or mortgages or things of a kindred nature. The Court does not agree. The contract which was dated June 1, 1955 is listed in one of the exhibits in the contract between Martin-Marietta Corporation and Foote.

Foote says further that Southern was negligent in furnishing a car with defective brakes in violation of the Federal

Safety Appliance Act and was also negligent in that it violated the Tennessee statutes in failing to abide by the minimum clearance provisions of those statutes and that Southern's own negligence caused the accident and resulting death; and that the contract dated June 1, 1955 between Southern and Foote's predecessor does not provide that it shall indemnify Southern for its own (Southern's) negligence.

Foote says further that the accident was covered by the Tennessee Workmen's Compensation Law which provides for an exclusive remedy to the widow for the death of her husband.

In that connection, Foote asserts that it would be unconstitutional to hold that it is liable in this case since it had already paid for coverage under the Workmen's Compensation Law which shields it from liability for claims for damages other than those made under that law.

The jury has today returned a verdict in favor of Mrs. Brogdon for $20,000.00 and thus it becomes the duty of the Court to decide whether Southern is entitled to indemnification to the full extent of the $20,000.00, or, if not full indemnification, partial indemnification or equitable contribution against Foote.

The pertinent part of the indemnity agreement of June 1, 1955 between Foote's predecessor and Southern is as follows:

"4. * * * The party of the second part will, moreover, indemnify and save harmless the Railway Company from and against the consequences of any loss of life, personal injury, or property loss or damage which may be caused by, result from, or arise by reason of or in connection with, any limited or restricted clearances for said industrial tracks.

"5. That it will indemnify and save harmless the Railway Company against any and all damage *resulting from negligence* of the party of the second part [Foote in this case], its servants and employees, in and about said industrial tracks and the rights of way therefor; * * *" (Emphasis added.)

The proof in this case shows that Foote and Southern violated the clearance provisions of the Tennessee statutes hereinbefore mentioned. As previously indicated, that statute provides that the clearance along railroad tracks shall be at least 22 feet above the top of the rails. This conveyor which contributed proximately to the death of Mr. Brogdon was not more than 18 feet from the top of the rails—the proof indicates nearer to 17 feet. If the conveyor had cleared 22 feet over the rails, this tragic accident could have been avoided.

Foote and Southern are equally responsible in the opinion of the Court in this respect.

The proof shows that when the question arose about the previous chute being ill adjusted for loading the center-loaded cars, or the "quad-pod" cars as the witnesses described them, Mr. Fletcher came from Washington, representing the Southern, and Mr. LeFever, the man representing Foote, had a detailed conference in which Mr. Fletcher said in substance, "We know the conveyor does not meet the clearance provisions of the statutes or the contract, but if you (referring to LeFever) want to handle it that way it is your property, it is on your land, you do so."

Under those conditions it is the opinion of the Court that Southern was not required to spot a car on those tracks so long as Foote failed to comply with the clearance provisions of the Tennessee statutes and that in that respect Southern and Foote were equally negligent, and, therefore, equally responsible.

The second point relates to the brakes on the car. This was a highly controversial issue before the jury. If the jury had followed the evidence of the Southern's witnesses it would have been required to find that the brakes were not defective. On the other hand, if it believed the evidence of the plaintiff's witnesses, it would have been required to

find, as it did find, that that car had defective brakes.

In the opinion of the Court, the evidence preponderated in favor of the plaintiff's theory that the brakes were defective on the occasion of this accident. The Court could analyze this evidence and cite the portion which was convincing to the Court and presumably to the jury, but it would serve no purpose in this opinion.

■ Another point that is involved pertains to the negligence of Foote. In the opinion of the Court, Foote was about as negligent as a company could be under the same circumstances which existed in this case.

In the first place, it put a 17-year-old boy who had only been working for it for five days out there on that industrial track and permitted him to manipulate the brakes on that car. The evidence was such that the jury could have found that he touched the wrong lever and thus released the brakes entirely rather than using the wheel to release them gradually.

In the opinion of the Court, Foote Mineral Company was guilty of extreme negligence in permitting a minor, Paul Leek, to operate that car under the circumstances which obtained at the time of this accident. So the Court is of the opinion that under the common law count of the original complaint and under the count charging violation of the Tennessee clearance statute, each of the parties was guilty of negligence which proximately caused or proximately contributed to the accident and resulting death.

Now going to the points of law. The question is whether the language in this agreement of 1955 is broad enough to make Foote liable for a portion of damages where Southern has been found guilty of proximate negligence. In the opinion of the Court the language of that contract which has previously been cited is broad enough to make Foote liable for a portion of the recovery. The landmark case, or what appears to be the landmark case dealing with this subject is that of Buckeye Cotton Oil Co. v. Louisville & Nashville Railroad Company, 6 Cir., 24 F.2d 347. In that case, the language in the contract between the railroad company and Buckeye had similarities to the language in the present contract. In part it stated Buckeye "agrees to hold the first party [the railroad] harmless from the claims and demands of any and all persons on account of any damages or injuries caused directly or indirectly by the existence, location, or condition of any structure or obstruction of any kind on the premises of the second party or by any obstruction on said tracks."

In sustaining the action of the trial court, the Sixth Circuit Court of Appeals, in an opinion written by the late Judge Moorman, stated:

"There was no rule of public policy which forbade the railroad company from contracting with the oil company for indemnity against any damages which the railroad might be required to pay as the result of the ordinary negligence of its employees in operating engines and cars on these tracks."

The Court said further:

"It is said, however, and rightly so, that a contract will not be so construed, unless it was clearly intended to have that effect. This, of course, does not mean that the intention must be expressed in terms, but that, if not so expressed, it otherwise clearly appear in the language used."

In the opinion of the Court, the language contained in Section 5 of the June 1, 1955 contract is sufficient to entitle Southern to be indemnified for any negligence upon the part of Foote that contributed to the injuries which are the subject of this suit.

The Tennessee Supreme Court in the case of Kroger v. Giem, 387 S.W.2d 620 (1964) re-examined the rule announced by the Sixth Circuit in the *Buckeye* case. The Court held that the language which differed from that found in *Buckeye* was

not broad enough to hold Kroger. The language in the Kroger case follows:

"The contractor shall continuously maintain adequate protection of all his work from damage and shall protect the owner's property from injury arising in connection with this contract. He shall make good and hold the owner harmless from any such damage or injury."

The Court, speaking through Justice White, said:

"The Court of Appeals said, and we agree to its correctness, that it is nearly a universal rule that there can be no recovery where there was concurrent negligence of both indemnitor and indemnitee unless the indemnity contract provides for indemnification in such case by 'clear and unequivocal terms;' and general words will not be read as expressing such an intent. 42 C.J.S. Indemnity § 12, pp. 580–581; 27 Am.Jur. Indemnity, § 15, pp. 464–465; 175 A.L.R. § 19, pp. 34–37. The only case from this State which discusses this rule, which has been cited or which we have been able to find, is Buckeye Cotton Oil Co. v. Louisville & Nashville R. Co., 24 F.2d 347, 348 (6th Cir.). In that case it is said:

'There was no rule of public policy which forbade the railroad company from contracting with the oil company for indemnity against any damages which the railroad might be required to pay as the result of the ordinary negligence of its employees in operating engines and cars on these tracks. * * * It is said, however, and rightly so, that a contract will not be so construed, unless it was clearly intended to have that effect. This, of course, does not mean that the intention must be expressed in terms, but that, if not so expressed, it must otherwise clearly appear in the language used.'

"When this rule is applied to Article 30 we cannot see any intent, express or implied, to indemnify against indemnitee Kroger's proximate contributory negligence."

One of the troublesome questions confronting the Court is whether Southern would be entitled to recover against Foote if there were no contract. That is a recurring question in this Court. Foote carried workmen's compensation insurance and his widow has been paid or will be paid the limits of the compensation benefits which were in effect at the time of the accident, and which counsel has stated during the trial amounted to $14,000.00 plus $500.00 burial expense. This Court has held in effect in Trammell v. Appalachian Electric Coop, D.C., 135 F. Supp. 512, and possibly in other cases, that since the Workmen's Compensation Law is the exclusive remedy for the injured employee he should be confined to that remedy and that a third party should not be permitted by circuitous means to hold the employer.

This question raises the additional consideration whether the Workmen's Compensation Law precludes an employer from contracting to indemnify an injured third party.

This matter was considered by the Fourth Circuit in the case of General Electric Co. v. Moretz, 270 F.2d 780. In that case, the Court said at page 790:

"Much reliance was placed in the trial court in the pending case on the decision of Trammell v. Appalachian Elec. Cooperative, D.C.E.D.Tenn.1955, 135 F.Supp. 512, which was described as the only case interpreting the exclusive liability section of the Tennessee Workmen's Compensation Act. In that case the question now under consideration was broached but not decided. The case involved an action by the administrator of a deceased employee against the Cooperative on account of the death of the employee of a contractor who had agreed to undertake certain operations on behalf of the Cooperative. A third-party action was filed by the Cooperative against the contractor for indemnity but this was dismissed by the court on the ground that the third-party action would lie only if it was based upon contract, the court finding that no such

contract existed between the parties. We are told that the Trammell decision was followed in another unreported case in the United States District Court for the Eastern District of Tennessee which is now on appeal. But it does not appear that in either of these cases the court decided what was described in Trammell as the more interesting question—whether in Tennessee an employer may assume liability to indemnify a third person who has injured an employee covered by the compensation act of the state. Furthermore, Trammell was decided before Ryan. [Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133] We have no reason therefore to suppose that Tennessee will not follow the rule so well established in other jurisdictions which allows indemnity in cases of contract between the employer and the third person; and we do not reach the constitutional question whether the workmen's compensation act of a state may be so construed as to nullify· or modify the obligations of a common carrier to a shipper which have been assumed in accordance with acts of Congress passed under the commerce clause of the Federal Constitution, Const. art. 1, § 8, cl. 3."

■ In the opinion of this Court the employer may contract with a third party for indemnity for its own negligence. That was exactly what was done in this case if this Court has properly construed the contract between Foote's predecessor and Southern dated June 1, 1955.

This problem was also dealt with to some extent in the case of Roberson v. Bitner, D.C., 221 F.Supp. 279 (1963). See Baltimore & Ohio Railroad Co. v. American Viscose Corp., 214 F.Supp. 287 (N.D.W.Va.); also, Trammell v. Appalachian Electric Coop., supra.

■ We come now to the question of the amount Southern is entitled to recover from Foote. Whatever it recovers, in the opinion of the Court, is recoverable because of the contract terms and not pursuant either to the statutory or common law of Tennessee involving indemnification and contribution. That contract provides explicitly that the industry will pay the railroad for whatever damage the railroad sustains as the result of industry's negligence.

In order properly to evaluate the question of damages, the Court must determine from the evidence which it has heard here today how much of the loss to this widow was caused by the negligence of Foote.

The proof shows that deceased made something over $4,000.00 during the calendar year preceding this accident. The proof further shows that he had a life expectancy of some twenty years or more and a work expectancy of fifteen years. Under the circumstances of this case, the verdict of $20,000.00 was quite low. The only reason the Court can see for the amount of the verdict is that the jury felt from the proof that Mr. Brogdon was guilty of remote contributory negligence. In order to have found that, the jury must have found that he should have been on the ground at the time the car was moved, should have been on the catwalk on top of the car a sufficient distance from where the conveyor was located to avoid being hit, or should have stooped down at the time the car moved in order to miss the conveyor. These matters are imponderables which cannot be resolved since neither the Court nor counsel can read the minds of the jury.

It is the opinion of the Court and the Court finds that the negligence of Foote caused 50 per cent of the damages and the negligence of Southern caused the other 50 per cent. In sum, the Court holds that under the contract between Southern and Foote's predecessor dated June 1, 1955, Foote agreed to pay Southern for all the damage that was caused by its negligence, and Foote's negligence caused at least 50 per cent of this damage; (2) that Southern is entitled under the cross-action to recover the sum of $10,000.00 from Foote, plus one-half of the court costs.