Nels LARIVE, Plaintiff,

v.

UNITED STATES of America and Jerry Lindstrom, d/b/a Lindstrom Construction Company, Defendants.

Civ. No. 67–40S.

United States District Court,
D. South Dakota, S. D.

Oct. 9, 1970.

Costello, Porter, Hill, Banks & Nelson, Rapid City, S. D., for plaintiff.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., and Eugene N. Hamilton, Dept. of Justice, Washington, D. C., for the United States.

Reddish, Fiebig & Curtiss, by A. T. Reddish, Alliance, Neb., assisted by Franklin J. Wallahan, Rapid City, S. D., for Lindstrom Const. Co.

## DECISION

BECK, District Judge.

This action having been commenced under the Federal Tort Claims Act 28 U.S.C. § 1346(b), and settled in the course of the trial as between the plaintiff and the government at $351,000, it is now the position of the latter that it, under its contract with Lindstrom, the other defendant, can and should be indemnified to that extent, besides its attorney fees and costs to be allowed should this proceeding be favorable to the government.

The material facts bearing on that issue and alleged negligence in part are in the description of the accident site which consisted of the electrical substation, owned by the United States at Alliance, Nebraska, with definable areas in its steel and angle iron superstructure, designated as Bays Y–5, Y–6 and Y–7, 60 feet long running north and south, 40 feet wide east and west, and each of the bays 20 also running in north and south directions. Electrical components attached, consisted of bus bars, switches, fuses, current transformers, oil circuit breakers and wires, all designed to receive electrical energy from generating or transmitting stations located elsewhere in that state at a potential of 115,000 volts, which through various electrical devices would redistribute the incoming energy from those stations to purchasing utilities at a potential of 34,000 volts.

It was within that complex where Larive, Lindstrom's employee, suffered the injuries in the morning on May 17, 1966, as he under the supervision and directive from Marvin Stuhmer, Electrical Engineer for the United States Bureau of Reclamation, was crossing Bay Y–6 while in the process of moving the City of Alliance line from Bay Y–5 to Bay Y–7 and as he inside Y–6 came in contact with the set of lines energized at 34,000 volts.

The plans and arrangements for that change, as the court finds, had been made by authorized government personnel and Lindstrom on May 16 with knowledge on their part as to all of the hazards confronting those who were to move the line from the one bay to the other and in the completion thereof were required to cross Bay Y–6. Lindstrom, however, did not warn Larive as he started his climb up and into the high voltage structure and neither he nor his foreman were present when Larive entered into that site.

■ Those omissions by Lindstrom and Stuhmer's answers of "yes" to each of Larive's questions: is the station dead—that reference being to Bay Y–6 where the accident took place—and is it all right to go over there, with Larive acting on those safety assurances without any knowledge of his own that a mistake might have been made, or that customary precautions had not been met, or that there were reasons to disregard his employer's instructions to get along with the Inspector and to follow any suggestions the Bureau had to make, all combined and we have here under those facts and others substantially in accord, Lindstrom's alleged defense of contributory negligence not to have been established and as a matter of law not sustained.

■ The damages agreed on under the settlement, horrible as they were and from this point of view not in dispute or of a kind to be challenged, as the court finds, are well within the boundaries of an amount which under those circumstances would be held clearly reasonable.

Descriptions thereof though detailed only to some extent, will suffice as proof on that point. They are in the severe burns on the lower front of the abdomen, between the groin, the pubic area, the genitalia, the buttocks, right thigh, the right forearm and the entire left lower extremity, the perineum around the anal opening, the scrotum, the penis all up

into the lower quadrant of the abdomen, the sphincter control or anal opening like a charred piece of leather, the lower left extremity almost charred, all third degree burns, except the right forearm and the right foot, damage to the femoral artery, excruciating pain and suffering and finally a modified guillotine amputation of the lower left extremity at the mid-thigh level. He was on the critical list for three or four weeks and the end results, body permanent disability at 65%.

It was for Stuhmer, the government representative, as Larive came up to the danger area minutes or moments before the accident, not to have given assurance as he did that Y–6 was safe and prior thereto to have omitted positive investigations required for the plans made the night before. Lindstrom, also, should have been there; he, too, had the responsibility not to rely on others but to satisfy himself personally or through an authorized foreman that, as a matter of fact, the area had been deenergized.

■ Stuhmer's acts, affirmative and direct as they were, with Larive's response thereto as hereinbefore indicated, not amounting to contributory negligence, must be held as the proximate cause of the accident with the omissions of Lindstrom also factors or elements of responsibilities which however did not come into existence except as a matter of contract when he failed on his own obligation in the contract.[1]

Otherwise and more specifically expressed the fault of Lindstrom was in his failure: (1) to give his personal superintendency to the work or to have a competent foreman or superintendent satisfactory to the Contracting Officer on the work with authority to act at all times during its progress; (2) to be responsible for all damages to persons or property which would occur as a result of his fault or negligence; (3) to take proper safety and health precautions to protect the work and the workers; (4) to consider all existing lines, buses and equipment as energized, unless advised otherwise by the government inspector, and (5) to permit no work to be commenced in his absence or without the presence of a qualified foreman.[2]

United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), involving the construction of a provision, identical to the one before the court in this case and common to fixed-price government construction contracts, *"that a private contractor shall be responsible for all damages to persons or property that occur as a result of his fault or negligence"* (emphasis supplied), in a suit by an employee against the government under the Federal Tort Claims Act, as the award granted was reversed, came to the conclusion:

> "Though the Government under the contract clause involved here cannot recover for its own negligence, it is entitled to indemnity on a comparative basis to the extent that it can prove that respondent's negligence contributed to the employee's injuries."

The hypotheses for that decision according to the opinion was in the rule that "federal law controls the interpretation of the contract. * * *.", Clearfield Trust Company v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), and United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944), since it was "entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution," and in others which were applied: that the provisions of the contract were not ambiguous so as to bar a construction most strongly against the drafter that the contract should not be construed to permit an indemnitee to recover for his own negligence, unless the court is firmly convinced that such an interpretation reflects the intention of the parties and that "if the United States

---

1. Contract, Plaintiff's Exhibit 2, and Safety Requirements for Construction by Contract, Plaintiff's Exhibit 10.

2. Sections 11 and 12 of the General Provisions of the Contract and Section 32 of the Local Conditions.

expects to shift the ultimate responsibility for its negligence to its various contractors, the mutual intention of the parties to this effect should appear with clarity from the face of the contract." Other expressions to the same effect and referred to in the footnote to Seckinger at page 211 of 397 U.S., at page 885 of 90 S.Ct. are in Freed v. Great Atlantic & Pacific Tea Company, 401 F.2d 266 (6 Cir. 1968), that "It is a fundamental rule in the construction of contracts of indemnity that such a contract shall not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in clear and unequivocal terms.", George H. Dingledy Lumber Company v. Erie R.R., 102 Ohio St. 236, 242, 131 N.E. 723, 725 (1921), in Brogdon v. Southern Railway Company, 384 F.2d 220 (6 Cir. 1967) the same with a significant added remark, "It would have taken little time for a Southern Railway attorney to have added the words 'including damage from indemnitee's own negligence' to the language of paragraph 4. Not finding such language (or any compelling inference), we decline to supply it." See Kroger Company v. Giem, 215 Tenn. 459, 387 S.W.2d 620 (1964), General Accident Fire & Life Assurance Corp. v. Finegan & Burgess, Inc., 351 F.2d 168 (6 Cir. 1965), Young v. Anaconda American Brass Company, 43 Wis. 2d 36, 168 N.W.2d 112 (1969) and cases collected in the Annotation, 175 A.L.R. 8, pages 29–38.

■ This contract with safety for operating personnel as a major objective, that as a joint common goal to be achieved within the comparative negligence rule, each one within the assigned contractual area being responsible for precautions which if performed by one or the other of the parties, would have prevented the accident and we have here a responsibility which is joint, and a final conclusion that the government under this record, without allowance for attorney fees, is entitled to indemnity against Lindstrom to the extent of one-half of the settlement and interest at the legal rate.

This decision is to be regarded as the court's findings of fact and conclusions of law.

Accordingly, a judgment in favor of the Government and against Jerry Lindstrom, d/b/a Lindstrom Construction Company, forthwith to be prepared by counsel for the government and submitted for approval and entry in the sum of $175,500 and interest thereon at the rate of 6% per annum from June 26, 1968, besides costs to be taxed as provided for by law.