FIRST AMERICAN NATIONAL BANK, etc., et al., Appellants, v. TENNESSEE GAS TRANSMISSION COMPANY, etc., et al., Appellees. —428 S.W.(2d) 35.

Middle Section. December 1, 1967.

190

Bailey, Ewing & Dale, Nashville, for appellants.

Russell G. Lazenby, Glasgow, Adams & Taylor, Nashville, for appellees.

TODD, J.   East Tennessee Natural Gas Company has been substituted for Tennessee Gas Transmission Company as complainant. The parties named as defendant composed Oman Construction Company, a partnership.

This, therefore, is a suit by East Tennessee Natural Gas Company (hereafter called "the Gas Company") for the use and benefit of Travellers Indemnity Co. (hereafter called Travellers) as complainants, and against Oman Construction Company (hereafter called "Oman") as defendants.

The Chancellor awarded complainants a judgment for $3,674.66 for legal expenses resulting from alleged breach of contract to defend damage suits, and defendants have appealed.

The following facts are undisputed:

On June 13, 1949, Oman, as "contractor", and the Gas Company, as "owners", executed an agreement for the construction of a gas transmission line from Greenbrier, Tennessee to Oak Ridge, Tennessee. Among the provisions of the contract were the following:

"3. Right-of-Way. The rights obtained by the owner will include the right to install, maintain and remove piping and appurtenances, the right of ingress and egress and the right to clear and keep clear.

C-21. Contractor Responsible for Claims. The contractor shall assume the defense of and save harmless the Owner from all claims of any kind arising from or incidental to the performance of this contract.

C-29. Indemnification and Insurance. The contractor agrees fully to indemnify and save harmless the Owner from and against all claims and actions, and all expenses incidental to the defense of any such claims or actions, based upon or arising out of damages or injuries to persons or property caused by or sustained in connection with the contract or created thereby,

except such as may be caused by the negligence of the Owner, and among other things, if requested by the Owner, to assume without expense to the Owner, the defense of any such claims or actions.''

Three property owners of lands crossed by the pipe line sued the Gas Company and Oman for damages connected with the construction of the pipe line. The principal complaints were blasting damage, however one claim was based in part upon the loss of a spring resulting from excavation across the underground stream which fed the spring. The suits may be identified by the surnames of the plaintiffs therein, viz. (1) Peltz, (2) Austin, (3) Susack. The Peltz case was filed first, involved the largest damages, and produced the largest legal expense.

On October 3, 1950, the attorney for the Gas Company and Travellers called upon Oman to assume full responsibility for defense of the Gas Company against the Peltz claim and to pay any judgment rendered.

On July 16, 1951, the attorney for Oman wrote a letter to the Gas Company on the subject of the Peltz case pertinent parts of which are:

''With reference to the above styled action at law Mr. Clyde Key, counsel for American Mutual Liability Insurance Company and I, went to Wartburg, Tennessee on July 9th at which time this case was set for trial.

\* \* \* \* \* \* \*

Thereupon plaintiff's counsel for the first time produced a fourth count, which they moved the court that they be permitted to file, and in this fourth count they alleged in substance that under the rule of law existing in this state as to the liability of an owner for damages

resulting from blasting operations, that, irrespective of negligence on the part of either party, both the owner and contractors are liable for damages resulting from blasting. I am sure that your counsel are entirely familiar with this rule. We objected strenuously to the motion for leave to file an amendment to the declaration by inclusion of this fourth count, but the court, as was to be expected (but with no reflection upon the court), permitted the amendment to be filed. * * * Thereupon we immediately moved the court for a continuance of the case and frankly stated to the court that the introduction of this fourth count, presents an entirely new theory or basis for liability in the case, and in turn created an entirely different situation between your company and ours as defendants. The court recognized this and intimated that if the plaintiffs insisted on amending the declaration by adding the fourth count, he would grant a continuance. * * * Thereupon, the court continued the trial of the case until September 24th.

     *    *    *    *    *    *    *

Heretofore, we have proceeded with the defense of the case in your behalf on account of the fact that it was based upon the allegations of our negligence, but the fourth count of the declaration creates an entirely new situation, in that the theory under the count is that even though the explosives were properly and lawfully employed, and even though they were necessary for the construction of the project, nevertheless the owner of the project, East Tennessee Natural Gas Company, and the contractor are jointly liable for all damages proximately resulting therefrom. At this state of the lawsuit it is, of course, impossible to state whether the plaintiffs will be able to sustain their allegations of

negligence in counts one and two, or either of them, but we firmly believe that they will not be able to sustain the burden of proving negligence on our part insofar as any blasting damages are concerned, and that any recovery which may be awarded the plaintiffs will be under the allegations in the fourth count, insofar as any blasting damage is concerned. Should this be the result, it is our position that, under our contract with you, we are not required to hold you harmless against those damages resulting from proper construction practice and which were required or contemplated under the terms of the agreement. This situation obviously creates *a possible conflict of interests* between your company and ours; naturally we are not going to admit any negligence on which plaintiffs might recover under their original declaration and *we are going to defend the case as vigorously as we know how in every respect*. In view of this *possible conflict* we feel it our duty to advise you of the situation in order that you may have your counsel participate in the defense of the suit *if you so desire;* and, of course, we will cooperate with your counsel to the fullest and give him the benefit of our extensive investigations and preparation for the trial. \* \* \*'' (emphasis supplied)

In response, on August 3, 1951, the attorney for the Gas Company and Travellers wrote the attorney for Oman in part as follows:

"In view of the fact that you feel that *there may possibly be a conflict* between Oman Construction Company and its insurer, on the one hand, and East Tennessee Natural Gas Company and its insurer, on the other hand, *we think it might be well* for East Tennessee Natural Gas Company to be represented at the

hearing. Therefore, unless we receive word from you to the contrary prior to the time of the trial, someone from our firm will be present representing East Tennessee Natural Gas Company. * * *

"East Tennessee Natural Gas Company and/or its insuror will ultimately look to Oman Construction Company and/or its insurer to reimburse them for any expense incurred in connection with the litigation." (Emphasis Supplied)

A special plea relying upon a right of way agreement was met with a replication denying the validity of the right of way agreement because of alleged fraud or misrepresentation on the part of the Gas Company representative. The case was twice tried to juries with general verdicts against both Oman and the Gas Company. On appeal, the case was decided by the Eastern Section of this Court, in an opinion reported as East Tenn. Natural Gas Co. v. Peltz, 38 Tenn.App. 100, 270 S.W.2d 591 (1954). From August 3, 1951, until final disposition of the case, counsel for the Gas Company and counsel for Oman jointly defended the case.

In the Austin case, the complainants demanded to be defended by a letter identical to their letter of July 16, 1951 and the reply from Oman's attorney was in part as follows:

\* \* \* \* \* \* \*

"You may rest assured that Oman Construction Company will fulfill its contractual obligations to East Tennessee Natural Gas Company arising out of its contract for the construction of the Greenbrier-Oak Ridge pipeline. Any damages resulting from the construction of the line, which are not properly chargeable

to East Tennessee Natural Gas Company, and for which Oman Construction Company is legally liable, will be taken care of by Oman Construction Company.

"A reading of the declaration filed in this case indicates that there are or may be certain *items of damage related to the right-of-way* and for which, of course, Oman Construction Company would not be liable, and *Oman Construction Company's defense* of the action of law in question, and its indemnification of East Tennessee Natural Gas Company, *will be limited to those damage claims for which Oman Construction Company may be liable.*" (emphasis supplied)

The Austin declaration also contained a "liability-without-negligence" count. It was settled before trial.

In the Susack case, an identical demand for defense was made by complainants. No response to this demand is found in the record. The Susack declaration also contained a "liability-without-negligence" count. The case was settled before trial.

The complainants did incur legal expenses in the defense of the three lawsuits, in the amount allowed in the decree below.

Defendant insists that the "liability-without-negligence" phase of each of the three claims was the responsibility of the Gas Company and should have been fully anticipated, paid for, and released as a part of the right of way agreements which the Gas Company was obligated to procure. Defendant further insists that failure of the Gas Company to thus exonerate itself and Oman in advance is not one of the perils assumed by Oman in its indemnity agreement, (Sections C-21, C-29, supra).

■ It is a general rule that where the owner of private property executes a valid grant of easement for a specific purpose, he thereby agrees to, waives, and releases all those inconveniences, injuries and damages which might reasonably be expected to result from the normal and careful utilization of the easement for the purpose contemplated. Hord v. Holston, 122 Tenn. 399, 123 S.W. 637 (1909).

■ Where such grant of easement has not been obtained and a construction contractor enters upon and damages property as a necessary incident to the careful performance of the contract, the liability for such damages rests not upon the contractor, but upon the organization for whom the contractor is performing the work. Wood v. Foster & Creighton, 191 Tenn. 478, 235 S.W.2d 1 (1950).

Under section 3 of the contract, quoted above, it was the duty of the Gas Company to procure necessary right-of-way agreements from property owners. Such agreements, if valid and adequate in terms would have included the right to install the pipe line without liability for damages resulting from necessary and careful activities in constructing the pipe line. Hord v. Holston, supra. If, therefore, valid and adequate right-of-way agreements had been obtained by the Gas Company, the damages to be recovered by Peltz, Austin and Susack would have been limited to those resulting from negligence of Oman, and the entire responsibility for defense against and payment of the three claims would have rested upon Oman.

Stated in other words, a valid and adequate right-of-way agreement would have been a complete defense to the charge of liability without negligence (assuming that the blasting and disturbing the underground stream were

necessary parts of the work). Upon the insertion of the liability-without-negligence theory, it was proper for Oman to rely upon the right-of-way agreements by special plea and to notify the Gas Company of the situation and possible conflict of interest. When the replication of the plaintiff denied the validity of the right-of-way agreement, the duty of the Gas Company to defend its position became even more positive.

■ Complainants insist that the provisions of the contract are broad enough to include indemnity for legal expenses incurred in defending any claim arising in connection with the performance of the contract, regardless of its nature or source, including acts or omissions of the Gas Company. Defendants insist that claims resulting from the negligence, fraud, or violation of the contract by the Gas Company are not included in the indemnity agreement.

In section C-21 of the contract quoted above. Oman agreed to "assume the defense of * * * all claims of any kind."

The leading case in Tennessee on indemnity in building contracts is Kroger Co. v. Giem, 215 Tenn. 459, 387 S.W. 2d 620 (1964), wherein the owner sought recovery from a general contractor for extensive fire damage occurring during construction. The jury found the owner guilty of contributory negligence proximately causing the fire. The agreement provided:

"The contractor shall continuously maintain adequate protection of all his work from damage and shall protect the owner's property from injury arising in connection with this contract. He shall make good and

hold the owner harmless from any such damage or injury.''

The court held that:

''* * * it is a nearly universal rule that there can be no recovery where there was concurrent negligence of both indemnitor and indemnitee unless the indemnity contract provides for indemnification in such case by 'clear and unequivocal terms;' and general words will not be read as expressing such an intent. (citing authorities) 215 Tenn. at 472, 387 S.W.2d at 626.

Under the authority of Kroger v. Giem and citations therein, we hold that section C-21 is too general to include indemnity for negligent acts or omissions of the Gas Company.

In section C-29, quoted above, Oman agreed to ''indemnify * * * against all claims * * * and all expenses ʳ * * (of) defense of any such claims * * * *except such as may be caused by negligence of the owner* and * * * *if requested by the owner* to assume * * * the defense of any *such claims or actions.*

It is seen that, just as the rule of Kroger Co. v. Giem excludes negligence of the Gas Company from the coverage of section C-21, so also negligence of the Gas Company is expressly excluded from the coverage of section C-29.

▇ We are now faced with the issue of whether a general indemnity agreement which *does not* cover negligence of the indemnitee *does* cover breach of contract, fraud or misrepresentation of the indemnitee.

A number of excellent authorities have been cited in regard to the interpretation of indemnity clauses in con-

struction contracts. Principally, these authorities relate to the obligation of the contractor to pay the actual damage done to third parties, or damages to the property of the owner for whom the work is being done. Counsel have not cited, nor have we found any authority dealing with the liability of a contractor for *legal expenses* incurred by the owner in defending claims of third parties based in part upon breach of contractual obligation or wilful wrongdoing of the indemnitee.

In 42 C.J.S. Indemnity sec. 12, pp. 579, 580, 581 are found the following:

"A contract of indemnity should be construed so as to cover all losses, damages, or liabilities to which it reasonably appears to have been the intention of the parties that it should apply, but not to extend to losses, damages, or liabilities which are neither expressly within its terms nor of such character that it can reasonably be inferred that they were intended to be within the contract. *Such contracts are usually intended to provide against loss or liability of one party through the operations of the other, or caused by physical conditions that are under the control of the other, over which the party indemnified has no control and the party indemnifying has control.*

*Negligence.* A contract of indemnity which purports to relieve the indemnitee from the results of a failure to exercise ordinary care, by himself or his employees, should be strictly construed, and will not be held to provide such indemnification, unless so expressed in clear and unequivocal terms; and general words alone do not necessarily import an intent to hold an indemnitor liable for damages resulting from the negligence of the indemnitee. This does not mean how-

ever, that the intention must be expressed in terms, but that, if not so expressed, it must otherwise clearly appear in the language used; *and in construing such provisions the courts take into consideration the harsh results which would follow from an interpretation imposing such liability."* (Emphasis supplied).

To the same general effect are 27 Am. Jur. Indemnity, Sec. 15, pp. 464-465 and 13 Am.Jur. (2d)—Building, etc. contracts, sec. 141, pp. 132-134, 175 A.L.R. 34-37.

In Volume 17, 7th Decennial Digest, Indemnity, Sec. 8, there are countless annotations of cases, almost all of which deny recovery of indemnitee for results of indemnitee's own negligence.

The prevailing rule, as clearly approved in Tennessee in Kroger Co. v. Giem is against liability of indemnitor for negligence of indemnitee. A fortiori, the same rule should apply to breach of contract to procure right-of-way, or fraud or misrepresentation in so doing.

While negligence is distinguishable in many respects from wilful torts of fraud or misrepresentation, or breaches of contract, we see no reason for making any distinction in respect to the interpretation of indemnity agreements. The same reasons for exclusion apply as forceably, if not more forceably, to wilful acts and breaches of express agreements as to inadvertent negligent acts or omissions.

We therefore hold that Oman was not obligated by its contract to defend, pay expenses of defending, or satisfy the claims of Peltz, Austin and Susack to the extent that they were based upon "liability-without-negligence" for activities necessary in constructing the pipe line, or upon

the invalidity of right-of-way agreements procured by the Gas Company.

To hold otherwise would result in a situation wherein the Gas Company could with impunity neglect or refuse to provide necessary rights-of-way and subject Oman to the expense of defending and paying all claims of property owners for easement rights. Such would of course be an artificial, unreasonable and untenable interpretation of the contract.

■ Our interpretation of the contract favorable to the contention of Oman is determinative of the case, however we call attention to salient facts relating to whether Oman was in fact guilty of failure to defend claims upon demand of the Gas Company.

Oman defended the Peltz case from the date of demand (October 3, 1950) until July 16, 1951. On the latter date, Oman did not decline to, or cease to, defend the claim. Oman simply notified the Gas Company that there was a possibility that damages might ultimately be adjudged against the Gas Company on some ground exonerating the contractor, such as was done in Wood v. Foster Creighton, supra. Where such a possibility existed, there was a duty on the part of counsel to call attention to the situation and to avoid representing conflicting interests without full disclosure and consent of both parties.

The action of the Gas Company and its insurer following Oman's letter of July 16, 1951, was not consistent with their claim in the present case. The letter of August 3, 1951 stated, "we think it might be well * * to be represented at the hearing", and "someone from our office will be present". This was an indication that the complainants were unwilling for Oman's counsel to jointly defend them

where a possible conflict was involved. Thus the complainants effectively withdrew their previous demand for representation and were no longer requesting Oman to assume full defense. Complainants were apparently willing for Oman to furnish their defense only if Oman was willing to acknowledge unconditional liability. Oman did continue to defend the claims, limited only by the presence of counsel for complainants.

We conceive that if complainants desired to take advantage of their broad interpretation of Oman's agreement to furnish defense, their first recourse should have been to allow Oman to conduct the entire defense, and reserve the question of who should pay the claims until liability had been established. Suitable findings of fact in connection with verdicts would have been invaluable in resolving liability as between the Gas Company and Oman.

Upon the evidence in the record we find that Oman was not guilty of culpable failure to furnish defense.

Under our interpretation of the contract between the parties and their conduct thereunder, we respectfully disagree with the conclusions reached by the Chancellor.

The decree is reversed and the cause dismissed at complainants' cost.

Shriver, P. J., and Puryear, J., concur.