[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 9, 2010
JOHN LEY
CLERK

No. 09-15239
Non-Argument Calendar

_____

D. C. Docket No. 06-02791-CV-JEC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

$183,791.00 IN UNITED STATES CURRENCY,

Defendant-Appellant,

ROBINSON OKWUOSA,

Claimant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 9, 2010)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Robinson Okwuosa appeals the district court's grant of summary judgment in favor of the government in its civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6). Okwuosa also challenges the district court's decision to allow the government to file an untimely motion for reconsideration. Following a brief recitation of the relevant facts, we affirm.

## I.

Claimant Robinson Okwuosa was stopped by federal law enforcement agents on May 17, 2006 after he arrived at the Atlanta airport following a flight from Nigeria. He agreed to speak to the agents and informed them that he earned his living by exporting cars from the United States to Nigeria through his business, Bobby Imports. He was carrying $183,791 in U.S. currency on his person and in his carry-on bag, which Okwuosa claimed was proceeds from the sale of vehicles in Nigeria. After a narcotics detection dog alerted to the odor of narcotics on Okwuosa's carry-on bag, the agents seized the currency as drug proceeds.

Subsequent investigation by the government confirmed that Okwuosa owns Bobby Imports, a sole proprietorship that buys cars in the United States and exports them to Nigeria for sale. Okwuosa also provided documentation to the government to support his claim that the money he was carrying represented proceeds from the sale of cars in Nigeria.

Not convinced that the $183,791 seized from Okwuosa constituted legitimate business proceeds, the government filed a civil action for forfeiture of the currency on November 16, 2006. The government's theory was that these funds represented drug proceeds. The district court denied the government's motion for summary judgment on August 19, 2008, finding that, although the record suggested Okwuosa's involvement in some type of illegal activity, there was insufficient evidence linking the currency to the drug trade.

On September 17, 2008, the government sought leave to file an untimely motion for reconsideration, relying primarily on newly discovered evidence connecting Okwuosa to a Nigerian drug trafficking organization. The evidence was developed during a grand jury investigation that was ongoing during the pendency of the motion for summary judgment. The grand jury returned a sealed indictment on September 3, 2008, which was ordered unsealed on September 10, 2008. The government requested leave to file its motion for reconsideration in this case a week later.

The evidence developed during the grand jury investigation was as follows: Raymond Nsoedo led an organization that sold heroin in Detroit. The sale proceeds were sent as cash or blank money orders to Atlanta and elsewhere, where they were used to purchase vehicles that were then shipped to Nigeria. To avoid

3

reporting requirements, the money orders were purchased in a "structured" manner—that is, in small amounts or from multiple clerks or locations. Okwuosa's bank accounts showed deposits of more than $530,000 in money orders, most of which were purchased in the Detroit area in the structured manner used by Nsoedo's organization. On at least two occasions, Okwuosa deposited money orders from a known affiliate of Nsoedo who was later arrested in Detroit in connection with the delivery of five kilograms of heroin. In addition, Bobby Imports was identified as one of the businesses used to purchase vehicles on behalf of Nsoedo's organization, and Okwuosa testified that he used a company co-owned by Nsoedo as his agent for exporting certain vehicles. On two intercepted phone calls, Nsoedo and other individuals in his organization discussed Okwuosa's legal fees, tractor business, whereabouts, and travel plans. Finally, there was direct evidence linking Okwuosa and Nsoedo: Okwuosa wrote Nsoedo two checks, and Nsoedo placed numerous calls to a telephone number registered to Okwuosa.

On September 15, 2009, the district court granted the government's motion for reconsideration based on newly discovered evidence not available when the government moved for summary judgment. Because the newly discovered evidence supported the government's contention that the seized currency represented drug proceeds, and because Okwuosa failed to refute the government's

4

testimony, the district court entered summary judgment for the government. Okwuosa timely appealed.

## II.

"We review *de novo* the district court's order granting summary judgment." Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997). Summary judgment should be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Thus, where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). The record and all of its inferences should be viewed in the light most favorable to the nonmoving party. Id. at 587–88, 106 S. Ct. at 1356. However, once the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986) (quoting a prior version of Fed. R. Civ. P. 56(e)).

The Controlled Substances Act provides for the civil forfeiture of money "furnished or intended to be furnished by any person in exchange for a controlled

substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6). As a result of the enactment of the Civil Asset Forfeiture Reform Act in 2000, the government must establish by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). We look at the "totality of the circumstances" when determining whether the government has satisfied this standard. See United States v. $121,100.00 in U.S. Currency, 999 F.2d 1503, 1507 (11th Cir. 1993). The government may use circumstantial evidence as well as evidence gathered after it filed the civil forfeiture complaint to meet its burden. United States v. $291,828.00 in U.S. Currency, 536 F.3d 1234, 1237 (11th Cir. 2008). However, the government is not required to produce evidence connecting the money to a particular narcotics transaction. United States v. $242,484.00, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc). It need only show that the money was "related to some illegal drug transaction." Id. We evaluate the evidence presented with "'a common sense view to the realities of normal life.'" Id. at 1160 (quoting United States v. Carrell, 252 F.3d 1193, 1201 (11th Cir. 2001)).

Here, summary judgment was appropriate because the government established by a preponderance of the evidence that the money was subject to

forfeiture as drug proceeds.

First, the government's evidence showed that Okwuosa was carrying an unusually large amount of money—$183,791, to be precise. Although a large amount of cash alone is insufficient to meet the government's burden, it is "highly probative of a connection to some illegal activity." $121,100.00 in U.S. Currency, 999 F.2d at 1507. As we have previously recognized, "legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack. . . . because there are better, safer means of transporting cash if one is not trying to hide it from the authorities." $242,484, 389 F.3d at 1161. In contrast, drug rings do often utilize couriers to transport large amounts of cash in rubber-banded bundles. Id. at 1161–62.

Second, a drug dog alerted to the smell of narcotics on Okwuosa's carry-on bag, which contained some of the money. We have held that a narcotics dog's alert is a factor weighing in the government's favor. Id. at 1166. Although Okwuosa mentions on appeal that other courts have not found dog alerts compelling in light of evidence that a large percentage of U.S. currency is contaminated by drug residue, we have declined to adopt that theory where the claimant failed to present any evidence in support. Id. at 1165–66. Okwuosa has not only failed to present any evidence on the subject, he has actually undermined

7

his contamination theory in this case by testifying in his deposition that the bills were brand new. Currency that has never been used cannot, at the same time, have been tainted by drugs through the normal circulation process. The record thus supports the government's argument that the money seized from Okwuosa was connected to narcotics.

Finally, and most significantly, his bank accounts and business were linked to a Nigerian heroin trafficking ring. The government's affidavits detailed how Okwuosa deposited $530,000 in structured money orders, including money orders remitted by an individual who was later arrested in connection with a heroin delivery; identified Okwuosa's sole proprietorship as one of the businesses that purchased and exported vehicles on behalf of Nsoedo's organization, which was the method used by the organization to transfer drug proceeds from the United States to Nigeria; explained how Nsoedo and other individuals in his organization were overheard discussing Okwuosa's legal fees, tractor business, whereabouts, and travel plans; and provided evidence of direct contacts between Okwuosa and Nsoedo. Okwuosa did not come forward with any evidence to refute the government's declarations; instead, he merely speculated in his response brief that there might be innocent explanations for the money orders, Bobby Imports's export transactions, the phone conversations, and the checks to Nsoedo. Although

8

"[a]ll reasonable inferences arising from the evidence must be resolved in favor of the non-movant" on a motion for summary judgment, "inferences based upon speculation are not reasonable." Marshall v. City of Cape Coral, Fla., 797 F.2d 1555, 1559 (11th Cir. 1986).  In opposing the government's motion, Okwuosa failed to carry his burden of going beyond the pleadings and presenting competent evidence designating "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 323–24, 106 S. Ct. at 2553 (internal quotation marks omitted); see also Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.").  Based on the record developed in this case, the district court did not err in granting summary judgment for the government.

## III.

Under the local rules in effect at the time, any motion for reconsideration based on the district court's initial denial of summary judgment should have been filed by September 3, 2008.  The government, relying on Federal Rule of Civil Procedure 6(b), requested leave to file its motion for reconsideration two weeks later, on September 17, 2008.  Okwuosa argues that the district court erred when it

9

granted the government's motion for leave to file a motion for reconsideration. We disagree.

Rule 6(b) allows a court, for good cause, to extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Whether neglect is excusable is an equitable determination, "taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993) (addressing analogous Bankruptcy Rule 9006(b)). These circumstances include the danger of prejudice to the opposing party, "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. "We review the district court's determination of excusable neglect for abuse of discretion." Advanced Estimating Sys., Inc. v. Riney, 130 F.3d 996, 997 (11th Cir. 1997).

The equitable considerations in this case indicate that the district court did not abuse its discretion in granting the government's motion for leave to file an untimely motion for reconsideration. The danger of prejudice to Okwuosa was mitigated by the fact that the district court gave him thirty days to respond to the new evidence put forth by the government. The length of the delay was minimal:

10

the government's request for leave to file came only two weeks after the deadline for filing a motion for reconsideration. The reason for the delay was because Federal Rule of Criminal Procedure 6(e)(2)(B) barred the government from advising the district court of the new evidence obtained during the grand jury investigation until the indictment was unsealed, an event which took place three weeks after the district court initially denied summary judgment and one week after the window for filing a motion for reconsideration closed. Finally, there is no evidence that the government acted in bad faith. The record does not support Okwuosa's contention that the government had earlier disclosed some of the evidence acquired during the grand jury investigation. Although Okwuosa was asked at his deposition whether he purchased cars from Valu-Auto, this question arose during a line of questioning concerning Okwuosa's business relationships with various car dealers. The deposition took place more than five months before Valu-Auto was identified, via an intercepted email and phone toll records, as being affiliated with Nsoedo's organization. Thus, the question about Okwuosa's relationship with Valu-Auto was not a disclosure of grand jury information.

## IV.

For the foregoing reasons, we affirm the district court's decision to grant the government leave to file an untimely motion for reconsideration, as well as the

11

grant of summary judgment in favor of the government.

**AFFIRMED.**