John **KADYLAK**, Plaintiff

v.

**ROYAL CARIBBEAN CRUISE, LTD., et al., Defendants.**

**Civil Action No. 14-24149-Civ-Scola**

United States District Court, S.D. Florida.

Signed 02/29/2016

Filed 03/01/2016

---

David H. Pollack, Miami, FL, for Plaintiff.

Darren Wayne Friedman, Marcus G. Mahfood, Foreman Friedman, PA, Randy Scott Ginsberg, Natasha K. Alcivar, Royal Caribbean Cruises Ltd., Jonathan Bruce Aronson, Aronson Law Firm, David James Horr, P. Zak Colangelo, Ryan Matthew McCarthy, Stephanie Hurst Wylie, Horr Novak & Skipp, P.A., Miami, FL, for Defendants.

### Order On Defendants' Motions for Summary Judgment

Robert N. Scola, Jr., United States District Judge

This case arises from a specialty cruise and motorcycle accident during an excursion on St. Maarten Island. John Kadylak sued the excursion provider, the cruise line, and one of the cruise line's employees, Sergey Denysov. The excursion provider, Entertainment & Travel Alternatives, Inc. ("ETA"), and the cruise line, Royal Caribbean Cruise, Ltd. ("Royal Caribbean"), have moved for summary judgment. (ECF Nos. 51–52.) For the following reasons, ETA's motion for summary judgment is **denied** and Royal Caribbean's motion is **granted.**

### 1. Background.

ETA sells group cruise ticket bookings and offers motorcycle tours for its clientele while in certain ports of call. ETA has no contract with and is not sponsored by Royal Caribbean. Instead, Steven Wallach, the owner and President of ETA, purchases cruise tickets for members of ETA excursions, and the cruise line permits the excursion members to bring and store their motorcycles onboard the vessel. At each tour location, ETA selects the motorcycle tour routes through a local representative, and Royal Caribbean has no in-

volvement once excursion members leave the ship.

In March 2014, John and Sandy Kadylak, through ETA, booked a ninenight specialty excursion on Royal Caribbean's *Explorer of the Seas*, departing on April 24, 2014 from New Jersey. As is the case with all excursion participants, ETA required the Plaintiff to complete a Registration Form. The Form required the Plaintiff to verify that he had a minimum of 3,000 miles of motorcycle riding experience. Excursion members were reminded of this requirement in the documents they received when boarding the ship. On board the *Explorer of the Seas*, the Plaintiff also completed an ETA Motorcycle Information Sheet, including information about the Plaintiffs motorcycle and providing copies of valid driver's license and insurance. As part of the paragraph under the "Policy" section of the Sheet, it stated:

> It is agreed that you hold ETA and (cruise line name) and their agents/affiliates harmless for any damage and/or injury to your bike and/or person(s) either aboard the ship or on the islands during any of the rides.

*See* Motorcycle Information Sheet, ECF No. 51–1. During the Plaintiffs trip, ETA scheduled a motorcycle ride on the island of St. Maarten.

Defendant Denysov was the Staff Captain of *Explorer of the Seas*. He was responsible for ship safety, ship security, and deck maintenance. Either the Staff Captain or the Captain of the ship must remain onboard the ship at all times. If the Staff Captain is onboard, he is on call twenty-four hours a day. If the Staff Captain was off the ship, the Captain was on call.

Wallach and Denysov had known one another for many years and had previously discussed Denysov's experience riding motorcycles. Denysov told Wallach that he had been riding motorcycles for over 20 years. At some point during the voyage, Denysov decided to ride a motorcycle on St. Maarten.[1] Denysov was never a formal participant of the ETA tour. He neither paid ETA any fees nor signed any paperwork, including the Registration Form or Motorcycle Information Sheet. Denysov never claimed that he had a minimum of 3,000 miles of motorcycle riding experience.

On the day that the ship reached St. Maarten, Denysov completed all of his duties in the morning. He informed the bridge personnel and the Captain that he would be off-duty and was going ashore. Denysov also signed the ship's off-duty sheet. Neither the Captain nor any other Royal Caribbean employee instructed Denysov to ride a motorcycle on St. Maarten. When Denysov left the ship, he was not wearing a staff uniform or name tag.

After the ETA excursion members offloaded their motorcycles, the group assembled in front of the ship with Wallach and the road captains. Wallach introduced Denysov to the group as the ship's Staff Captain. Wallach then accompanied Denysov to a rental shop so that Denysov could rent a Harley Davidson. Denysov told Wallach that he did not have experience driving a Harley Davidson motorcycle. At the shop, Wallach used his credit card to pay for Denysov's rental.[2]

Outside, Denysov visually inspected the motorcycle, and discussed the throttle and

---

1. A dispute of fact exists regarding whether Denysov approached Wallach or Wallach approached Denysov about riding in St. Maarten. This dispute, however, is immaterial to the Court's analysis.

2. Wallach asserts that he only paid for the rental as Denysov's friend because Denysov's credit card was declined, and Denysov paid him back onboard the ship.

brake with Wallach or a road captain. Denysov then got on the bike, gave it a little bit of gas and collided with Plaintiff, crushing the Plaintiffs leg between his motorcycle and another rider's. Denysov acknowledged that the accident was his fault. At the time of the accident, Denysov did not have a valid motorcycle license, had never ridden a motorcycle with as much horsepower as a Harley Davidson, and had not ridden or owned a motorcycle in five years.

## 2. Legal Standard.

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 560 U.S. 330, 130 S.Ct. 2295, 2308, 176 L.Ed.2d 1070 (2010) (quoting Fed.R.Civ.P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir.2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 Fed.Appx. 791, 794 (11th Cir.2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox–Jones v. Bd. of Regents of Univ. of Ga.*, 448 Fed.Appx. 17, 19 (11th Cir.2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

## 3. BTA's Motion for Summary Judgment

ETA argues that it is entitled to summary judgment because the Plaintiff signed a waiver and it did not have a duty to warn the Plaintiff of an open or obvious condition. (*See* ECF No. 51 at 2.) The Plaintiff asserts that he never agreed to release ETA from liability and that ETA owed the Plaintiff a duty to make sure all of the participants in the ride were qualified to safety operate a motorcycle. (*See* ECF No. 67 at 10, 14.)

### A. Waiver

The Motorcycle Information Sheet states that "[the] agreement falls under the laws of Tennessee...." [3] (ECF

---

**3.** In its motion for summary judgment, ETA does not address what law governs the agreement; instead, it cites cases from Florida, Indiana, Missouri, New York, the Fourth Circuit, and the Seventh Circuit. (*See* ECF No. 51 at 4–5). The Plaintiff argued that Tennessee law applied in his response, and ETA did

No. 51–1.) Under Tennessee law, "[t]he legal effect of the terms of a lease are governed by the general rules of contract construction." *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 889 (Tenn.2002). "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Id.* at 890. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." 17 Am.Jur.2d, *Contracts,* § 245, *quoted in Empress Health & Beauty Spa, Inc. v. Turner,* 503 S.W.2d 188, 190 (Tenn.1973). "This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.,* 78 S.W.3d at 890.

 Tennessee courts recognize that "indemnifying a party for its own negligence is extraordinary risk shifting and such agreements must be regarded as exceptional rather than usual in the majority of business transactions." *Phoenix Ins. Co. v. Estate of Gainer,* No. M2007–01446–COA–R3–CV, 2008 WL 5330493, *6 (Tenn.Ct.App. Dec. 19, 2008). Accordingly, "a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it." *Kellogg Co. v. Sanitors, Inc.,* 496 S.W.2d 472, 474 (Tenn.1973).

In *HMC Technologies Corp. v. Siebe, Inc.,* No. E2000–01193–COA–R3–CV, 2000 WL 1738860 (Tenn.Ct.App. Nov. 27, 2000), a Tennessee Court of Appeals analyzed a hold harmless provision similar to the one on ETA's Motorcycle Information Sheet. In that case, the plaintiff sued to enforce an indemnification provision which provided:

> It is expected that Robertshaw Tennessee will hold HMC Technologies harmless to any claim of injury due to either the normal operation or the misuse of the proposed machinery.

2000 WL 1738860 at *1. The court found that the language of the contract was "general, broad, and seemingly all inclusive." *Id.* at *3. "It d[id] not express in clear and unequivocal terms an intent to require Robertshaw to indemnify HMC *against HMC's own culpable conduct." Id.* (quotation omitted). Instead, the language of the contract could "fairly be interpreted as covering claims arising from the culpable conduct of Robertshaw." *Id; see also Wajtasiak v. Morgan County,* 633 S.W.2d 488, 490 (Tenn.Ct.App.1982); *First American Nat'l Bank v. Tennessee Gas Transmission Co.,* 58 Tenn.App. 189, 428 S.W.2d 35, 39 (1967).

In light of the Tennessee cases holding that general hold harmless provisions like the one at issue here do not indemnify a party against its own culpable conduct, the Court finds that the waiver in the Motorcycle Information Sheet does not bar the Plaintiffs claims of negligence against ETA. Apparently recognizing this fact, ETA's reply brief ignores the contract analysis. Instead, ETA raises the new argument that the accident occurred prior to the tour actually beginning, and, thus, ETA cannot be a cause of the Plaintiffs injuries. (*See* ECF No. 77 at 3–4). It is inappropriate for a defendant to raise a new argument in a reply brief. *See, e.g., Foley v. Wells Fargo Bank, N.A.,* 849

not contradict this assertion in its reply. (*See*　　ECF No. 67 at 10; ECF No. 77 at 3.)

F.Supp.2d 1345, 1349 (S.D.Fla.2012) (Dimitrouleas, J.). Thus, the Court will not consider the new argument.

### B. Negligence

▮ To establish a claim of negligence, a plaintiff must show "(1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiffs injury; and (4) that plaintiff suffered damages." *Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1236 (S.D.Fla.2006) (Moreno, J.). In the Complaint, the Plaintiff alleges that ETA owed a duty of care to its customers to exercise reasonable care during its motorcycle excursions. (ECF No. 1 at 10). The Plaintiff asserts that ETA breached this duty by "failing to ensure that all riders had the requisite level of experience and/or skill to partake in the planned excursion, "permitting riders to partake in an excursion organized by ETA that did not have the requisite level of experience and/ or skill to operate in a safe manner," "permitting inexperienced employees of [Royal Caribbean] to join paying customers in their planned excursions," "failing to take the necessary safety measures to prevent an accident," and "failing to properly monitor participants of their excursion, so as to prevent accidents." (*Id.*)

ETA argues that it had no duty to warn the Plaintiff because "[t]he risk of an accident involving a motorcycle is an open and obvious condition," and "ETA had no notice that Denysov would create a dangerous condition." (ECF No. 51 at 6.) ETA, however, misses the central facet of the Plaintiffs claims. The issue is not whether ETA had the duty to warn the Plaintiff of the general dangers inherent to operating a motorcycle. The issue here is whether ETA had a duty to its customers to ensure that all of the individuals participating in the ride met the minimum safety qualifications set by ETA. If the Plaintiff injured

himself while on the ETA ride or had been injured by another official member of the excursion, ETA's argument may have some merit, but that is not the case. Denysov's lack of experience was neither open nor obvious. ETA was aware of the dangers of permitting an inexperienced rider to join the tour, which is why it emphasized the 3,000 miles rule; yet it permitted Denysov to join without filling out the paperwork or attesting to his experience. Moreover, prior to the accident, Denysov told Wallach that he had no experience with a Harley Davidson.

ETA insists that Denysov was not a member of ETA's tour because his name was never on the manifest and, therefore, it had no duty to ascertain his motorcycle experience. This, however, is a material issue of fact that cannot be resolved on a motion for summary judgment. The facts on the record, including Wallach and Denysov talking about riding in St. Maarten, Wallach introducing Denysov to the tour group, and Wallach assisting Denysov in renting a motorcycle, could lead a reasonable juror to conclude that Denysov was part of ETA's excursion. Accordingly, the Court denies ETA's motion for summary judgment.

### 4. Royal Caribbean's Motion for Summary Judgment

▮ The Plaintiff asserts claims against Royal Caribbean for its own negligence (Count Two), as well as vicarious liability for the negligence of Denysov (Count Three). (ECF No. 1 at 7–10.) The substantive law governing suits between a cruise line and its passengers is general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir.1989); *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir.2004).

## A. Negligence

The elements for negligence under general maritime law are the same as those under common law. *Crayton v. Oceania Cruises, Inc.*, 600 F.Supp.2d 1271, 1275 (S.D.Fla.2009) (Ungaro, J.). The Plaintiff alleges that Royal Carribean owed a duty of reasonable care to passengers to provide for their safety while on excursions, and "owed a duty to prevent its staff and officers from acting in a manner that foreseeably could cause injury to passengers." (ECF No. 1 at 8). The Plaintiff claims that Royal Caribbean breached these duties by "allowing one of its officers to ride with passengers on a motorcycle tour when it knew or should have known that Denisov did not have adequate training and experience," "failing to properly monitor Denisov," and "failing to adopt and/or enforce procedures prohibiting ship's officers from participating in excursions with passengers." (*Id.*)

As an initial matter, the Plaintiff attempts to apply a strict liability theory of negligence based on Royal Caribbean's status as a common carrier. (*See id;* ECF No. 65 at 10 ("[A] common carrier has an 'unconditional responsibility for the misconduct of crewmembers toward passengers.")) This theory, however, is limited to a common carrier's responsibility for its crewmembers' *intentional* torts. *Cf. Doe*, 394 F.3d at 913–14 (finding a cruise line strictly liable for a crewmember's sexual assault of a passenger). In negligence cases, the Supreme Court has held that a "shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). "[T]he benchmark against which a shipowner's behavior must be measured is *ordinary reasonable care under the circumstances,* a standard which requires, as a prerequi-site to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where ... the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir.1989) (emphasis added). Further, once the passenger leaves the ship, the cruise line only "owes its passengers a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir.2012). A cruise line must warn passengers only of those dangers that "the cruise line knows or reasonably should have known," and "which are not apparent and obvious to the passenger." *See Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F.Supp.2d 1308, 1315 (S.D.Fla.2011) (Jordan, J.) (citations omitted).

Here, the Plaintiff has cited no facts from which it may be inferred that Royal Caribbean knew or should have known of any dangerous or unsafe condition associated with the ETA tour. For example, there is no evidence that Denysov or any other Royal Caribbean employee had caused a vehicle accident with the motorcycle group in the past, and, unlike ETA, there is no information to support a duty by Royal Caribbean to request information regarding Denysov's driving history. Without evidence of Royal Caribbean's actual or constructive knowledge of a dangerous condition, the Plaintiff has failed to adequately invoke Royal Caribbean's duty to warn. *See Koens v. Royal Caribbean Cruises, Ltd.*, 774 F.Supp.2d 1215, 1220 (S.D.Fla.2011) (King, J.) ("[M]erely pleading the existence of [cruise line's] duties without providing a factual basis for their imposition is insufficient to state a cause of action."); *Smolnikar*, 787 F.Supp.2d at 1318; *Isbell v. Carnival Corp.*, 462

F.Supp.2d 1232, 1237 (S.D.Fla.2006) (Moreno, J.). Therefore, Royal Caribbean is entitled to summary judgment on Count Two.

## B. Vicarious Liability

 The Plaintiff also claims that Royal Caribbean is vicariously liable for the negligent acts of Denysov. (*See* ECF No. 1 at 9–10.) General maritime law recognizes the traditional principles of agency. *Archer v. Trans/Amer. Servs., Ltd.*, 834 F.2d 1570, 1573 (11th Cir.1988). Therefore, an employer may be found liable for the negligent acts of an employee acting within the scope of his employment. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1235–36 (11th Cir.2014).

 In determining if acts occur within the course of employment, a court should consider whether "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." Restatement (Second) of Agency § 228; *see also Doe*, 394 F.3d at 908 (citing another section of the Restatement (Second) of Agency while examining a maritime agency relationship); *Jackson Marine Corp. v. Blue Fox*, 845 F.2d 1307, 1310 (5th Cir. 1988) (considering similar factors, including "(1) the time, place and purpose of the act; (2) its similarity to acts which the servant is authorized to perform; (3) whether the act is commonly performed by such servant; (4) the extent of departure from normal methods; (5) the previous relations between the parties; and (6) whether the master would reasonably expect that such an act would be performed."). Generally, the existence of an agency relationship is a question of fact that should be determined by a jury. *See*

*Franza*, 772 F.3d at 1235–36. A court however, may grant summary judgment, if no reasonable juror could conclude that an employee's negligent actions were taken within the scope of employment. *See, e.g., Pardo v. Tanning Research Labs., Inc.*, 996 F.Supp. 1222, 1225 (M.D.Fla.1998) ("While Plaintiffs are correct that the existence of an agency relationship is generally a fact question, when a party bearing the burden of proving agency fails to produce evidence in support of its allegations or where the evidence presented is so unequivocal that reasonable persons could reach but one conclusion, a court may determine the lack of agency as a matter of law.").

In this case, there are no facts establishing a triable issue of fact regarding Denysov's agency relationship. The undisputed facts show that Denysov was on the ETA tour for his own personal enjoyment. He was not ordered to be there by Royal Caribbean and it was not part of his duties as Staff Captain. In fact, the only reason that Denysov was able to participate in the tour was because he finished his official duties in the morning and was able to go off-duty. The staff logs show that Denysov was not on duty at the time of the accident, Denysov told the Captain that he was leaving the ship for personal time, and Denysov was not wearing his Royal Caribbean uniform or name tag. There are simply no facts from which a reasonable juror could conclude that Denysov was acting with the scope of his employment with Royal Caribbean. Accordingly, the Court will grant summary judgment for Royal Caribbean on Court Three.

## 5. Conclusion.

Because the Motorcycle Information Sheet waiver does not bar the Plaintiffs claims and there is a triable issue of fact regarding ETA's negligence, the Court de-

nies ETA's motion for summary judgment (ECF No. 51). Conversely, because there are no facts establishing Royal Caribbean's knowledge of a dangerous condition or that Denysov was acting within the scope of his employment, the Court **grants** Royal Caribbean's motion (ECF No. 52).

**Done and ordered** in chambers, at Miami, Florida on February 29, 2016.